C. W. PARK, DOING BUSINESS AS C. W. PARK DRAMATIC
COMPANY, *Plaintiff in Error*, v. W. L. MORGAN, CITY
TAX COLLECTOR OF THE CITY OF SANFORD, ORANGE
COUNTY, FLORIDA, *Defendant in Error*.

Where under the authority conferred upon the City of Sanford,
an ordinance was passed imposing license taxes upon busi-
nesses and occupations, and among others, the following.
"All small shows other than circuses, either theatrical
or vaudeville, given within tents, whether covered or un-
covered, or given in any temporary enclosure, for each day,
Twenty-five dollars ($25.00)" such a ordinance is not un-
constitutional as being an improper and unjust classifica-
tion, nor, as denying the equal protection of the laws, nor
as being unwarrantedly discriminatory.

Appealed from the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the
court.

*John E.* & *Julian Hartridge,* for Plaintiff in Error;

*Geo. A. DeCottes,* for Defendant in Error.

HOCKER, J.—On the 12th of January, 1912, the relator
C. W. Park applied to W. L. Morgan, City Tax Collector
of the City of Sanford, in Orange County, for a Theater
License in the following language: "We through our
business manager, herewith present our request for a
Theater License and accompany same with $12.50, the
lawful fee under the ordinances of the city of Sanford and
the State of Florida, making this a tender of the said
license fee, and ask that you as City Tax Collector issue
said license to the undersigned company, and oblige,
          - (Signed)   C. W. PARK DRAMATIC COMPANY,
                    By M. E. WHEELAN, Business Manager."

The license was refused, and mandamus brought by relator.

It appears that the City of Sanford had passed an ordinance charging fifty per cent of the State license tax for "theater building fitted with scenery and kept for theatrical and other exhibitions." The State license is fixed at $25.00 per year for cities of 2000 to 5000 inhabitants (Acts of 1907, Chapter 5597, page 55) and the 2nd, section of the same Chapter confers upon counties, incorporated cities and towns the power to impose fifty per cent of the above tax, and says: "But such city or town may impose taxes on any business, profession or occupation not mentioned in this act when engaged in or managed within such county, city or town." On the same page (55) will be seen the following:

"Theatrical shows or traveling players and minstrels other than those taxed as circuses, for *each* performance in cities or towns of ten thousand or more inhabitants, $25.00. Less than ten thousand inhabitants fifteen dollars." Then follows a proviso "that managers of theaters or halls employing traveling troupes, theatrical, operatic or minstrels giving performances in buildings fitted up for such purpose shall be allowed to give as many performances in such building or theater as they wish on payment of the following license ———— in cities or towns of five to ten thousand inhabitants fifty dollars per annum," etc. On page 53 of the act it will be seen that "shows or circuses exhibiting or giving *a* performance within tents whether covered or uncovered, with or without horses, in cities of ten thousand inhabitants or more, one hundred dollars. Less than ten thousand inhabitants and more than five thousand, fifty dollars." These quotations are made to show the method of the Legislature in

classifying the different kinds of theatrical exhibitions, shows, etc., and fixing license rates.

The City of Sanford on the 16th of October, 1911, also passed the following ordinance:

"AN ORDINANCE IMPOSING CERTAIN LICENSE TAXES.

Be it ordained by the Mayor and City Council of Sanford.

Sec. 1.    That the license tax hereinafter mentioned shall be paid to the City of Sanford by the persons engaged in, managing and transacting the several businesses or occupations hereinafter mentioned, to-wit: Moving picture shows, Fifteen Dollars ($15.00), Street Carnivals, Street Shows, Street Performances or Exposition Companies for each tent booth or other structure, and for each day Ten Dollars ($10.00).    All small shows other than circuses, either theatrical or vaudeville, given within tents, whether covered or uncovered, or given in any temporary enclosure, for each day Twenty-five Dollars ($25.00).

Sec. 2.    Contractors contracting for buildings, erection or construction of buildings, dwellings, warehouses or other structures, Fifty ($50.00) Dollars, bill posting, and for the tacking of display cards for advertising Five ($5.00) dollars.    Agents for clothiers and tailors taking orders from sample books or catalogues, for cloth or men's, women's and children's clothing, not otherwise taxed as merchants, and not having an established place of business and legitimately engaged in the clothing, tailoring, dry-goods or haberdashery business, Fifty ($50.00) Dollars, Pressing Clubs for the cleaning and pressing of clothes, dependent for its existence on a collective number of persons or members, making a flat rate or charge for a certain stipulative period of time for work

done, and not charging for work by the piece, Twenty-five ($25.00). Dollars.

Sec. 3. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

I hereby certify that the foregoing ordinance was duly passed by the City Council in session October 16th, 1911.

(Signed) M. W. LOVELL,<br>City Clerk.

Approved this 19th day of October, 1911.

(Signed) Forest Lake, Mayor."

The tax collector in his answer to the alternative writ justifies his refusal to grant the license applied for by reason of the following provision of the latter part of section one of this ordinance: "All small shows other than circuses, either theatrical or vaudeville, given within tents, whether covered or uncovered, or given in any temporary enclosure, for each day Twenty-five Dollars ($25.00)."

The City of Sanford, under Section 10 of its Charter passed by the Legislature of 1911, as Chapter 6392, laws of 1911, was given the power "to tax, regulate and license in such sums and in such manner as they deem proper any and all exhibitions and shows and prohibit them if they see fit."

The Circuit Judge having overruled a demurrer to the answer of the Tax Collector, and the relator refusing to plead further, final judgment was rendered in favor of the respondent Tax Collector, and from this judgment a writ of error was sued out.

The alternative writ alleges that Parks is "the owner and manager of a certain dramatic performance; that he has been presenting the same and doing business under the name of the C. W. Parks Dramatic Company; that in pursuance of this business he is accumtomed to pre-

sent the said dramatic performance through his agents in various cities of the State of Florida, and that it was his desire and purpose to present the same in the City of Sanford, Orange County, Florida, during the week beginning January 22nd, 1912; that it was his habit and custom in pursuance of his business aforesaid, and in the presentation of the theatrical and dramatic performance managed by him, to lease and rent and use in each of the towns and cities of the State of Florida where said performance was given sufficient land situate in said city or town to permit the erection of a canvas tent or temporary enclosure and to erect thereon a canvas tent or temporary enclosure for the purpose of the presentation of the theatrical and dramatic performance aforesaid, for the purpose of carrying out the business of the petitioner and for that purpose had and was possessed of a suitable and proper canvas tent equipped with a stage and scenery and all the appliances belonging to and usual in the ordinary Opera House whereby said tent is in truth and in fact a portable theater."

The two assignments of error are discussed as one, and raise the constitutionality of the town ordinance under which the Collector is acting. The ordinance is attacked as discriminatory and as preventing relator from the equal use of the land which he has rented and in which he has property rights; and that it is not within the power of the City Council to pass such an ordinance as to impose such a restrictive license in the use of land or other real property by the owner. It is attacked as not being equal and uniform taxation, and as imposing on a business two different classes of licenses. A reference to the statute law, Acts of 1907, will disclose the fact that the Legislature has adopted classifications of theaters, dramatic performances and shows of various kind not differing in

principle from the classification contained in the town ordinance. The Legislature discovered sufficient reasons why the license for a regular theater building should be smaller than the license for temporary traveling shows and dramatic performances. The reasons which governed the legislative mind may have been various. It may be that shows and performances of the latter kind require more and stricter police regulation, that they invite a different class of people to congregate, and that the moral and intellectual influence of such performances are not on a plane with more permanent ones conducted in a regularly constructed theatrical building. The question of fire protection may also have had influence. The same consideration may have influenced the town council in adopting the ordinance which is attacked. As the ordinance practically adopts the legislative basis of classification, and being not unreasonable, the ordinance should be sustained.

This court in the case of Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, text, 382, 55 South. Rep. 398, has followed the Supreme Court of the United States in determining whether a legislative classification violates the 14th Amendment of the Federal Constitution in denying the equal protection of the laws. We there said: "1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a

law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

It does not appear that there is any discrimination in the ordinance, between persons of the same class, nor does it affirmatively appear that the classification affected by the ordinance is arbitrary and unjust.

The judgment of the Circuit Court is affirmed.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and COCKRELL, J. J., concur.