W. W. Dusenbury, *Petitioner*, v. B. B. Chesney, as Chief of Police of the City of St. Petersburg, *Respondent.*

En Banc.

Opinion filed April 4, 1929.

*Spear, Viney, Skelton & Pearce* for Petitioner;

*Raney H. Martin* and *Carroll R. Runyon,* for Respondent.

Strum, J.—In habeas corpus proceedings, instituted originally in this Court, it appears that petitioner, W. W. Dusenbury, is held in custody by the respondent upon a charge of having violated ordinance of the City of St. Petersburg No. 633-A, by conducting "a public auction sale of merchandise without having first procured from the Director of Finance of the City of St. Petersburg proper license so to do."

The ordinance applies to "all sales at public auction of

merchandise in the corporate limits of the City of St. Petersburg.'' Amongst others, the ordinance contains the following provisions:

Section 4: When the provisions and requirements aforesaid have been complied with by the applicant he shall obtain a license to conduct such auction sale which license shall be issued to him by the Director of Finance of this City upon the payment of the sum of Two Hundred Fifty ($250.00) Dollars per day for the period of such auction sale. Provided, however, that in cases where the applicant shall have been continuously engaged in business in this city as a retail or wholesale dealer in the goods or wares mentioned in Section One for a period of Two (2) years next preceding the date of the sale at public auction the license shall be issued to conduct such auction sale upon the payment of Two Hundred ($200.00) Dollars and upon compliance with the provisions and requirements of the preceding sections of this ordinance, and such license shall be good for a period of thirty (30) days exclusive of Sundays and holidays.

Petitioner, being one who has not been continuously engaged for two years in business in the City of St. Petersburg as a retail or wholesale dealer in the goods being auctioned by him, contends that as to him the ordinance is discriminatory, unreasonable, prohibitory and therefore invalid.

The only authority which has been called to our attention for the passage of said ordinance by the city is the following general authority found in the Charter Act:

''To impose license taxes upon privileges, businesses, occupations and profits carried on and engaged in

within the City; and the amount of such taxes shall not be dependent upon the general State Revenue Law.''

The power to impose license taxes thus conferred upon the city is not an unlimited or arbitrary power, but one to be exercised reasonably and in conformity with general law. Under this authority, the city may not directly prohibit auction sales of lawful character, nor can it adopt such unreasonable or oppressive regulations as would indirectly produce such result. *Ex parte* Harrell, 76 Fla. 4, 79 So. R. 176, L. R. A. 1918 F514; Curry v. Osborne, 76 Fla. 39, 79 So. R. 293; Cary v. Ellis, 78 Fla. 186, 82 So. R. 781. Generally speaking, the sale of goods at auction is a legitimate method of disposition, although subject of course to lawful regulation. Unless the character of the goods sold or the method of circumstances under which an auction sale is conducted are such as to justify its restraint on that account in the proper exercise of the police power, there is no reasonable justification for its suppression. The sole criterion prescribed by this ordinance for the imposition of the higher license is whether the applicant has been continuously engaged in business in the City of St. Petersburg as a retail or wholesale dealer in the goods or wares desired to be sold for a period of two years next preceding the date of sale at public auction. If so, a license may be obtained by such person for $200.00 which will be good for thirty days. If not, then the applicant must pay a license tax of $250.00 per day, although such person may be engaged in selling identically the same goods and under identically the same circumstances as one conducting an auction sale who has been in business in that city for more than two years and who may therefore obtain a license to carry on such sale for thirty days upon the payment of a license fee of only $200.00. The exaction of the ordinance

purports to apply as well to sales of innocuous merchandise of ordinary use and consumption, as to that which might be a proper subject of exclusion under the police power as detrimental to the public health, comfort, convenience or morals. The tax imposed by this ordinance does not purport to be other than an occupation license tax.

Petitioner contends that the classification fixed by the ordinance is unreasonable and discriminatory. Classifications for the purpose of imposing occupation license taxes which arbitrarily discriminate between residents and non-residents on the ground of residence alone and without other practical justification in point of fact, (see 12 C. J. 1120), are usually rejected as discriminatory, particularly if such classification operates to exclude the non-residence solely on account of his residence. City of Saginaw v. McKnight, 63 N. W. R. 985; Mott, Due Process of Law, page 281. But the courts have frequently approved classifications, imposed in the exercise of the regulatory police power, which distinguish between permanent and transitory merchants in the conduct of auction and other sales of certain classes of merchandise. See Mogul v. Gaither, 121 Atl. R. 32; Central Lumber Co. v. South Dakota, 226 U. S. 157, 57 L. Ed. 164; Holsman v. Thomas, 147 N. E. R. 750, 39 A. L. R. 760; Baccus v. Louisiana, 232 U. S. 334, 58 L. Ed. 627. Aside, however, from the question of classification, which is unnecessary for us to now consider, the higher license tax imposed by this ordinance upon those in business less than two years is entirely out of proportion to any lawful purpose for which it could be applied in the legitimate exercise of the general power conferred by the Charter of the City to impose license taxes. No question of public health, safety or morals being involved, the difference in the license tax imposed upon the two classes of auction sales is so great that it can have no fair or just

relation to any difference in burden cast upon the city in licensing or supervising such sales, or in the administration of public affairs incidental thereto. The higher tax imposed by the ordinance is palpably disproportionate to occupation license taxes imposed by the city upon other businesses, which range from $10.00 to $200.00 per annum, except for carnivals upon which a higher tax is imposed. The obvious effect of the ordinance is to largely, if not entirely, prohibit under the pretext of a license the sale at auction of goods by persons who have not been continuously engaged in business in the city for two years previously, even though the merchandise to be sold, and the methods and circumstances of the sale, be of inoffensive character. By thus suppressing a lawful business, the ordinance tends to create a monopoly and is in restraint of trade. As already stated, the city here involved has no power to prohibit auction sales of a character not subject to exclusion under the police power as detrimental to public health, safety, peace, morals, comfort or convenience. If it is the purpose of the city to protect the public in the purchase of merchandise of a character or in a manner which readily lends itself to the practice of fraud and deception, that end must be accomplished by means other than those here attempted. In exercising a general power to impose taxes, cities can not invade the right of lawful property disposition under the guise of taxation it is manifest that the object of the ordinance is not merely to tax but to exclude. Chaddock v. Day, 42 N. W. R. 977; Brooks v. Mangan, 49 N. W. R. 633.

That portion of the ordinance imposing a higher tax upon those engaged in business for less than two years in said city is clearly an unreasonable exercise of the general power conferred by the Charter Statute to impose license taxes, and is therefore invalid. Roach v. Ephren, 82 Fla.

523; 90 So. R. 609, the principles decided in which were applicable to the case at bar. In re: Sipe, 49 Ohio St. 536, 17 L. R. A. 184; City of Mankato v. Fowler, 20 N. W. R. 361; Carrollton v. Bazzette, 42 N. E. Rep. 837; 31 L. R. A. 522; Margolies v. Atlantic City, 50 Atl. R. 367. See also the notes to Dorenberg v. Spokane (215 Pac. R. 518), 31 A. L. R. 295; Holsman v. Thomas (147 N. E. R. 750), 39 A. L. R. 760, 776; Miller v. Greenville (132 S. E. R. 591), 46 A. L. R. 155; State ex rel. Toi v. French, 30 L. R. A. 415. See also Moffitt v. City of Pueblo, 133 Pac. R. 754; People ex rel Moskovitz v. Jenkins, 94 N. E. R. 1065; 35 L. R. A. (N. S.) 1079; People v. Wilson, 94 N. E. R. 141; 35 L. R. A. (N. S.) 1074; note to People v. Rawley (204 N. W. R. 137), 39 A. L. R. 1381, 1390, dealing with peddlers and transient merchants. 3 McQuillian Munic. Corp. Sec. 1090.

The case of Park v. Morgan, 64 Fla. 414, 60 So. R. 347, relied upon by respondent, dealt with traveling tent shows, and is clearly distinguishable from the case at bar. The classification there involved, as well as the higher license tax imposed upon travelling tent shows, was justified by the probability of increased fire hazard in the case of tent shows and the necessity for increased police protection and stricter supervision than is usually necessary with permanently established theaters, the latter being due amongst other things to the fact that travelling tent shows are usually located on some detached lot where crime and disorder are more probably and more difficult to prevent. Also, travelling tent shows usually attract a different class of people than the permanent theater. Other practical differences justifying that classification, as well as the imposition of a substantially higher tax on the travelling tent show, might also be mentioned. None of these distinctions, however, nor any others of like im-

port, apply to the two classes of auction sales here involved, the only difference between which is that one is to be conducted by a person two years or more in business and the other by a person in business less than two years, there being no distinction as to the kind or quality of goods to be sold or the location or surrounding circumstances of the sales. One class of such auction sales would constitute no greater practical menace to public safety, peace, health or morals, nor impose upon the city any greater burden of supervision or administration, than the other. The municipal powers under consideration in the Park case were broader than those here relied on, besides which a broader degree of discretion on the part of municipal corporations is ordinarily recognized in the classification for the purpose of imposing license taxes on exhibitions, shows, and the like—businesses which sometimes tend to degenerate into potential nuisances—than in the case of the ordinary commercial businesses, including that of selling at auction. City of Mankato v. Fowler, *supra*.

In Mogul v. Gaither, 121 Atl. R. 32 and in *Ex parte* West, 243 Pac. R. 55, the basis of classification here involved was sustained as reasonable. The ordinances under consideration in those cases, however, directly prohibit in the regulatory exercise of the police power the auction sale of jewelry, gold, silverware, etc., by those in business less than a year, a power which the cities there involved were at least tactily conceded by the court to have, and did not seek, as in this case, to accomplish that result by an arbitrary and excessive use of the taxing power. Besides, the ordinance here in question extends to auction sales of all merchandise, while those in Mogul v. Gaither and *Ex parte* West, *supra,* extend only to auction sales of gold, jewelry, precious stones, etc. Auction sales of the latter class of merchandise are usually recognized as affording a reason-

able basis of independent classification in the exercise of the regulatory police power for the purpose of preventing fraud and deception. Levy v. Stone, decided at this Term, 121 So. R. 565; Holsman v. Thomas, 147 N. E. R. 750; 39 A. L. R. 760; *Ex parte* West, 243 Pac. R. 55.

Petitioner discharged.

TERRELL, C. J., AND WHITFIELD, ELLIS, BROWN AND BUFORD, J. J., concur.