HARRY ADAMS, *Petitioner*, v. E. R. ISLER, Chief Policeman of Tallahassee, Florida, *Respondent*.

Original Jurisdiction.

Division B.

Opinion filed May 6, 1931.

Petition for rehearing denied June 16, 1931.

458

*Thompson & Roberts,* of Tallahassee, for Petitioner;

*Guyte P. McCord* and *LeRoy Collins,* of Tallahassee, for Respondent.

DAVIS, J.—Harry Adams, the petitioner, obtained from a Justice of this Court a writ of habeas corpus returnable before Division B.

By the return to the writ it appears he is held in custody of E. R. Isler, Chief of Police, charged with having violated two sections of an ordinance of the City of Tallahassee which provides in part as follows:

"Section 1. No person, firm or corporation shall offer for sale or sell at public auction any diamonds or other precious or semi-precious stones or imitations thereof, watches, clocks, jewelry, silverware, solid or plated, goldware, solid or plated, or other precious or semi-precious metal ware, solid or plated, bric-a-brac, china and glassware or some of such articles, in the City of Tallahassee except between the hours of eight o'clock A.M. and six o'clock P.M. on days other than Sundays and legal holidays.

Section 2. No person, firm or corporation shall offer for sale or sell at public auction any diamonds or other precious or semi-precious stones or imitations thereof, watches, clocks, jewelry, silverware, solid or plated, goldware, solid or plated, or other precious or semi-precious metal ware, solid or plated, bric-a-brac, china

and glassware in the City of Tallahassee unless at the time of said sale there is securely attached to each such article a tag or other label upon which shall be plainly written or printed in the English language a true and correct statement of the kind and nature of the material of which such article is made or composed and the percentage of karat of purity of such material or metal; and in case such articles are plated or over-laid, then such tag or label shall contain a true state-ment of the kind of plate and the percentage of such plating and the kind of material or metal covered; and when precious or semi-precious stones are offered for sale or sold such written statement shall set forth the true name, weight, quality and fineness of such stones, and imitations shall be described as such; and when watches or clocks are sold, the true name of the manufacturer shall be stated in such writing, and no part or parts of the movements or mechanism of such watches and clocks shall be substituted or contain false or misleading names and or trade marks; neither shall second hand, old or used movements be offered for sale in new cases without a true statement to that effect.

Section 3. Such tag or label referred to in Section 2 hereof shall remain securely attached to any article of merchandise and shall be delivered to the purchaser as a true and correct description and representation of such article or articles sold, and shall be deemed prima facie evidence of intent to defraud the purchaser thereof in case any such written statement on such tag or label is not a true and correct description and representation of such articles sold.

Section 4. It shall be unlawful for any person to act or to employ another to act as a by-bidder or what is commonly known as "capper" or "booster" at any such auction sale; or to make or accept any false or misleading bid or to pretend to buy or sell any such

aforesaid articles sold or offered for sale at any such auction.

Section 5. It shall be unlawful for any person, firm or corporation to offer for sale or sell at public auction any diamonds or other precious or semi-precious stones, or imitations thereof, watches, clocks, jewelry, silverware, solid or plated, goldware, solid or plated, or other precious or semi-precious metal ware, solid or plated, bric-a-brac, china and glassware, or some of such articles, at any time in a store or store building having show window or windows or glass front or partly glass front where such show window or windows or glass front or partly glass front have their transparency obstructed in any way or manner."

Petitioner represents to the Court as a basis for his discharge that on March 27th, 1931, he was arrested by the police department for failure to pay a license tax of five hundred dollars per day to conduct an auction sale of jewelry in said city and that he was subsequently released on habeas corpus by the Circuit Court of Leon County, Florida, because such license tax was unreasonable and excessive. Petitioner further represents that he thereupon applied to the City of Tallahassee for a license to conduct an auction sale and was issued same, for which the City of Tallahassee demanded, collected and charged the sum of $12.50.

It is further represented that on April 8th, 1931, the City Commission of Tallahassee met and by unanimous vote passed the above quoted ordinance under the authority of the City given by its charter "to pass all such ordinances and laws, not inconsistent with the constitution and laws of the United States and of this State, as may be expedient and necessary for the preservation of the

public peace and order, etc." (Sec. 136, Chapter 8374, Acts of 1919).

This ordinance, it was recited, was of an emergency nature, and was therefore, so it is contended, within the powers of the City to make immediately effective under Section 22 of Chapter 11257, Acts of 1925, which provides: "All ordinances passed **** shall become effective thirty days from the date of the passage thereof, except that the City Commission may, by unanimous vote, pass emergency ordinances to take effect at the *time* named therein."

In the instant case it appears that the ordinance was adopted at 3:30 P.M., April 8, 1931. It further appears that petitioner was arrested on April 8, 1931, charged with having violated the ordinances at 7 o'clock P.M., in the evening, less than four hours after the ordinance is alleged to have been passed.

One of the provisions of the Charter of Tallahassee is to the effect that:

"Every ordinance of a general and permanent nature shall be published once within ten days after its final passage in a newspaper of general circulation published within said City (Section 23, City Charter)." Section 23 Chapter 8374, Special Laws, Acts of 1919.

The ordinance here is of a general and permanent nature and is highly penal in character. The recitals in its preamble indicate that it was directed at a business then being carried on in the city, and while we may accept as final and not reviewable here, the judgment of the City Commission as to the emergency nature of this ordinance, it by no means follows that the power given to the city to enact *emergency* ordinances and to make them take effect at the "time" named therein, dispenses with the

requirement of publication of the ordinance as required by that equally significant section of the Charter which immediately follows that relating to the adoption of such emergency ordinances.

This requirement, as we have seen, is that *every* ordinance of a general and permanent nature shall be published *once* within ten days, etc. Section 23 Chapter 8374, Acts of 1919, Special Laws, *supra.*

The fact that an ordinance is recited to be of an emergency character does not take it out of the requirement of publication which in terms applies to "every" ordinance provided it is of a general and permanent nature such as this purports to be.

Furthermore the section of the Charter which authorizes the City to pass emergency ordinances does not provide that the City Commission can make such ordinances take effect "immediately" but only "at the *time* named therein." This indicates that it was evidently the intention of the Legislature to have some specific "time" named for the ordinance to take effect probably as soon as it could be properly published, which might be immediately after it was adopted. So long as the ordinance is published "once" within ten days of its final passage, the statute is complied with, but we are unable to find anywhere in the charter where publication of an ordinance of this character can be entirely dispensed with even though it is enacted under the emergency clause.

In the present case it does not appear that the ordinance under attack has been published at all, notwithstanding such ordinance is, beyond question, of a general and permanent character. Furthermore, it is highly penal in its effect and its recitals indicate it was specially

passed to apply to a business then actually being carried on in the City.

Under such circumstances the ordinance is not enforceable until every provision of the city charter necessary to give it legal existence has been strictly complied with. Publication as required by the charter is a condition precedent to its effectiveness as legal authority to support the arrest and imprisonment of the petitioner for not complying with it. Hall v. Phoenix City, 107 So. 221.

What we have said sufficiently disposes of the present case altho the ordinance is also attacked as being unreasonable, discriminatory, oppressive, unconstitutional, and beyond the present municipal charter powers of the City of Tallahassee.

Without undertaking at this time to finally decide such questions, we may say that it does not convincingly appear that an ordinance of this general character, properly adopted and published, and not unreasonable in its general application to established and permanent merchants of the city, is wholly beyond the lawful powers of Tallahassee under its charter. Levy v. Stone, 97 Fla. 458, 121 So. 565; Dusenbury v. Chesney, 97 Fla. 468, 121 So. 567; Ex Parte Harrell, 76 Fla. 4, 79 So. 166.

On the contrary, ordinances similar to the one here before the Court, have been generally sustained as a valid exercise of the general municipal police power in other jurisdictions. Davidson v. Phelps, 107 So. 86; Clein and Ellman v. City of Atlanta, 124 S. E. 882.

Petitioner discharged.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.