GEORGE W. McCALL, Chief of Police of Panama City, Florida, v. THE STATE OF FLORIDA ex rel. E. R. DANIELS.

23 So. (2nd) 492                                    June Term, 1945
October 5, 1945                                          En Banc

*Thomas Sale,* for appellant.

*J. M. & H. P. Sapp,* for appellee.

THOMAS, J.:

The relator was discharged by the circuit judge from the custody of the appellant who held him under a warrant charging him, "as proprietor of Orange Blossom Bar and Cafe," with having permitted "alcoholic beverage, to-wit, beer, containing more than one. per cent alcohol by weight, to be consumed in said cafe . . . " In his petition for writ of habeas corpus the relator attacked the validity of the ordinance forming the basis of the charge against him. From the allegations of the petition and the questions posed by the appellant and

the appellee we gather that there are really two points of law presented for determination by us—namely, whether the ordinance was properly passed as an emergency measure, and whether it is so vague and indefinite in its terms as to be inoperative.

In the preamble were the statements that Panama City was a vital defense area; that workers in a shipyard nearby were engaged in a vital part of the nation's war program; that soldiers training at Tyndall Field visited the city in large numbers; that over indulgence in alcoholic beverages would create inefficiency in those engaged in the war effort; and that "the measure [was] an emergency measure . . . for the immediate preservation of the public peace, property, health and safety." It is conceded by the appellee that the city commission had the power under the charter, the appropriate provisions of which we shall presently analyze, to enact emergency legislation, but he insists that the statements in the preamble did not describe a situation amounting to an emergency justifying the exercise of that power. This power was granted in Section 42 of the charter, Chapter 11678, Laws of Florida, Acts of 1925, where an emergency measure was defined as "an ordinance or resolution for the immediate preservation of public peace, property, health, or safety . . . in which the emergency is set forth and defined in a preamble thereto." There is ample recognition in our decisions, for instance, State ex rel. Skillman v. City of Miami et al., 101 Fla. 585, 134 So. 541, and the decisions of other courts of the general rule that the determination of the existence of an emergency justifying an ordinance of this character rests in the judgment of the municipal legislative body, but it may well be that the rule would be varied by the requirement that the emergency he "set forth and defined"; however, it seems unnecessary now to decide the question for reasons we believe will become obvious as we discuss this aspect of the litigation.

Under Section 41 of the charter no ordinance can be passed until read at two regular meetings with at least one week intervening, unless it is an emergency measure, or unless this requirement is dispensed with by unanimous vote of the commission with all members present. No attack whatever is

made on the manner in which the ordinance in question was introduced, considered, and enacted; so we will not assume that it was not passed at two meetings of the city commission held one week apart, nor that this requirement was not dispensed with by unanimous agreement of the members of the commission, all being present.

Section 43 of the charter deals with the publication of ordinances after their passage, and there it is required that those of a general or permanent nature shall be published once within ten days after final passage. It seems, then, that there is no distinction between ordinary measures and those enacted to meet emergencies so far as the publication is concerned. In this connection it is well to consult the case of Adams v. Isler, 101 Fla. 457, 134 So. 535, where, under provisions of the city charter of Tallahassee, similar to, or identical with, the ones under consideration, it was held that requirements of publication applied alike to both classes of ordinances.

The only distinction between ordinary and emergency measures in the light of the circumstances reflected in this record is the time at which the latter would become effective. The former would be effective, of course, thirty days after final passage; the latter at the time stated therein, which was, in this case "upon . . . publication." Since the record is silent on the subject, we shall assume that the ordinance in question was published within ten days after its passage on 17 September 1942.

We now advert to our statement that it would be unnecessary to decide whether the court should scrutinize the preamble to determine whether an emergency was sufficiently set forth or defined. Our investigation of the authorities has convinced us that even if the declaration of an emergency were found defective the ordinance would not, for that reason, be void, but the effective date would only be postponed until the time an ordinary ordinance would become operative. Geller v. Dallas Ry Co., (Tex.) 245 S.W. 254; In Re: Hoffman, 155 Cal. 114, 99 Pac. 517, 132 A.S.R. 75. Typical of the decisions on this point is the one of the Supreme Court of Oregon in Barton v. Recorder's Court of Vale et al., 60 Ore. 273, 119 Pac. 349, which held that an invalid emergency clause in a statute did

not make the law void, but only affected the time when it should become operative, and that one charged with having violated its provisions long after it would have become effective without the emergency clause was in no position to complain on that score.

As we have seen, the ordinance involved in the instant case became operative under either classification in 1942—as an ordinary ordinance 17 October, as an emergency measure at the time of publication sometime before 27 September of that year—and the violation of it is alleged to have occurred in 1945. We conclude that under any construction it became effective long before a violation was alleged to have occurred and that the relator cannot succeed therefore in his attack on the validity of the measure on the ground that the emergency clause was defective.

We think that in challenging the ordinance because of its vagueness and uncertainty the relator stands on much firmer ground. In Section 1 it is ordained that "it shall be unlawful for any *place of business* . . . to permit any person to consume" alcoholic beverages, and it is explicitly provided that the inhibition applies to "all places of business licensed in the City of Panama City . . . regardless of whether or not such business is licensed for the sale of alcoholic beverages." (Italics supplied.) A "place of business" is simply a location where business is transacted or, as it is defined in Oxford English Dictionary, "a shop, office, warehouse, commercial establishment." Substituting these synonyms, we see that it is unlawful for an office, warehouse, or commercial establishment licensed in Panama City to permit a person to imbibe alcoholic beverages within certain hours. Clearly the place of business, an inanimate object, could not regulate the conduct of anyone. True, the ordinance attempts to make the proprietor and the consumer equally responsible, but what is intended to be prohibited, the drinking between certain hours or the drinking in places occupied by licensed businesses? Was it the purpose of the commission to make it an offense to drink on premises occupied by a licensed business while none to drink during the same period in places used by businesses unlicensed, or in public places? Was it intended to make the proprietor of a

licensed business only the keeper of his brother who should become thirsty in the forbidden hours?

These questions suggest themselves, but the answers are not suggested by them.

Another objection emphasizing the uncertainty of the ordinance is the failure to take into account any intent on the part of a proprietor to violate its terms or even to consider the principle that a person is presumed to know and intend what he does. One engaged in an undertaking utterly disassociated from sale of beverages could be prosecuted under the ordinance because a passerby partook of alcoholic beverage at his place of business, though the proprietor might be sojourning elsewhere. One totally ignorant of an act supposedly performed at, or by, his place of business could find himself facing a fine or imprisonment.

It is fundamental that statutes creating crimes must be definite in describing the conduct denounced in order that the ordinary person may know how to comply with their provisions. The ordinance does not meet the test. We think any reasonable man would find it difficult to comprehend with any appreciable degree of certainty what his demeanor should be to avoid violation of the prohibitions, what evil was attempted to be cured, who should justly answer for infringement.

We hold the ordinance vitally defective and affirm the circuit judge's ruling discharging the relator.

Affirmed.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, ADAMS and SEBRING, JJ., concur.