339 So.2d 232 (1976)
Milton LIFSCHITZ et al., Appellants,
v.
CITY OF MIAMI BEACH, Florida, Appellee.
No. 76-787.
District Court of Appeal of Florida, Third District.
October 12, 1976.
Rehearing Denied November 9, 1976.
*233 Cypen & Nevins and Stephen H. Cypen, Miami Beach, for appellants.
Joseph Wanick, City Atty., Miami Beach, Richard A. Kanner, Miami, Ritter & Ritter, Coral Gables, for appellee.
Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Orlando, for Florida Association of Realtors, amicus curiae.
Richard M. White, Miami, for Miami Bd. of Realtors, amicus curiae.
Before HENDRY and NATHAN, JJ., and SACK, MARTIN, Associate Judge.
PER CURIAM.
Plaintiffs, Milton Lifschitz and Melvin Schwartz, take this appeal from an adverse final judgment in an action for injunction against the enforcement by the defendant, City of Miami Beach, of Ordinance No. 74-2018, the Rent Stabilization Law.
In City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974), the Supreme Court of Florida ruled that Section 166.021, Florida Statutes, the home rule statute, was constitutionally valid and that the City of Miami Beach was authorized to enact rent control measures, provided sufficient objective guidelines and standards were utilized for delegation of the legislative powers of the City to the rent control administrator. Pursuant to that decision, the City of Miami Beach passed a revised rent control ordinance, which is the subject of the instant action for injunction.
*234 The final judgment in this case contained the following findings of fact: that the City of Miami Beach had the power and legal authority under Section 166.021(1), Florida Statutes, to enact Ordinance 74-2018; that the ordinance was validly enacted in accordance with the mandatory provisions of Section 9 of the Charter of Miami Beach, which provides for the adoption of ordinances to meet public emergencies; that due to the unusual character of Miami Beach, as demonstrated by the evidence, there did exist at the time of passage of the ordinance and thereafter until the time of final hearing, appropriate and sufficient circumstances, conditions and factors to justify its enactment; that Ordinance 74-2018 is neither improper nor an unlawful delegation of the legislative power and authority of the City of Miami Beach, as it provides sufficient and adequate guidelines in its delegation of power to the Rent Control Administrator, as provided in City of Miami Beach v. Forte Towers, Inc., supra; that although certain portions of the ordinance, namely the sections on evictions, prohibitions and survivorship conflict with and are superseded by The Florida Residential Landlord and Tenant Act and the Florida Probate Act (Chapters 83 and 731, Florida Statutes), the evidence reflects that the conflicting provisions are not so mutually connected or dependent upon the rest of the ordinance as to require their continued inclusion to make the rent control provisions work; that the ordinance can be effectively administered without the conflicting provisions; that the evidence failed to prove that the ordinance was vague, indefinite, ambiguous, arbitrary, oppressive, confiscatory, unreasonable or discriminatory, or that it unreasonably impaired the rights of landlords under contracts in existence prior to the effective date of the ordinance.
The first point on appeal concerns whether the ordinance is void because in fact no emergency existed and because the ordinance was not adopted in accordance with the extended notice and public hearing requirements of the city charter. The appellants contend that although the ordinance was enacted on December 11, 1974, as a purported emergency, the ordinance did not go into effect until January 1, 1975, 22 days after enactment, a period over twice as long as the minimum time required before a regularly enacted ordinance may become effective. Appellants further argue that the ordinance could have been passed on first reading on December 11, 1974, and still have become effective as a regular ordinance on January 1, 1975, while still fulfilling mandatory requirements of the charter for the passage of such regular ordinances, including notice, publication, filing and hearings.
In responding to these contentions, we look to Section 9 of the Charter of the City of Miami Beach, which in pertinent part states:
"... To meet a public emergency affecting life, health, property, or public safety, the City Council, by two-thirds vote of the members of the City Council, may adopt the emergency ordinance at the meeting at which it is introduced and may make it effective immediately... ."
We also consider the relevant portions of the preamble to Ordinance 74-2018, as follows:
* * * * * *
"WHEREAS, a grave and serious public emergency exists with respect to the housing of a substantial number of citizens of Miami Beach; and
"WHEREAS, the deterioration and demolition of existing housing; an insufficient supply of new housing; the inhibition upon the construction of new housing resulting from the operation of the Florida Pollution Control Act, other environmental protection laws, and an insufficient supply of financing; and the existing economic inflationary spiral have resulted in a substantial and critical shortage of safe, decent and reasonably priced housing accommodations as evidenced by the low vacancy rates prevailing in the City; and
"WHEREAS, this emergency cannot be dealt with effectively by the ordinary *235 operations of the private rental housing market, and unless residential rents are regulated, such emergency and the inflationary pressures therefrom will produce a serious threat to the public health, safety and general welfare of the citizens of Miami Beach, Florida;
"NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF MIAMI BEACH, FLORIDA, that existing Chapter 17A of the Code of the City of Miami Beach, Florida, is deleted and the following substituted therefor... ."
* * * * * *
As clearly demonstrated by the preamble, the City found that an emergency existed. The ordinance is presumptively valid, and the question of the existence of an emergency at the time of its passage rested in the judgment and discretion of the city council. Glackman v. City of Miami, 51 So.2d 294 (Fla. 1951); State v. City of Miami Beach, 234 So.2d 103 (Fla. 1970).
The record reflects that at trial, there was ample evidence as to the factors creating a housing emergency, for example, a scarcity of housing, accelerating rents and a constant influx of people seeking housing in the area. Accordingly, the finding of the trial judge that an emergency existed was supported by competent evidence and will not be reversed on appeal.
Appellant's argument that the 22-day delay in the effective date of the ordinance rendered it a non-emergency is without merit. The record demonstrates that the reason for the delay was explained by the rent director:
"There were two reasons. First, accepting the fact that most tenants pay rent on the first of the month, I felt that there would be a tremendous amount of confusion created if the law passed effective December 11, and refunds would have to be made for approximately 20/31 of a month. A second reason would be that the intervening period until January 1 would give us sufficient time to establish an office and get it going."
Assuming arguendo that the use of the emergency procedure was error, the trial court will not be reversed because, as stated in McCall v. State ex rel. Daniels, 156 Fla. 437, 23 So.2d 492, 493-94 (1945),
"... even if the declaration of an emergency were found defective the ordinance would not, for that reason, be void, but the effective date would only be postponed until the time an ordinary ordinance would become operative."
Appellant's second point on appeal concerns the severability of those sections of the ordinance which were found to have been preempted by state law. Appellant's primary contention is that the subject ordinance could not conceivably have been enacted without the invalidated eviction provisions.
Where certain portions of an ordinance are invalidated, the remaining sections retain their validity unless they are found to be dependent upon those sections which have been declared void. Lysaght v. City of New Smyrna Beach, 159 So.2d 869, 870 (Fla. 1964). While the eviction provisions of the Miami Beach ordinance certainly fostered the City's purpose in enacting the rent control law, the remaining provisions are in no way dependent upon them. Florida Statutes Chapter 83 contains ample standards for the termination of rental agreements. It imposes numerous duties upon both landlord and tenant which are enforceable by civil action. In particular, Section 83.44 imposes an obligation of good faith in the performance or enforcement of every rental agreement or duty imposed by Chapter 83. It should also be noted that Section 12 of the rent control ordinance (which was not affected by the trial court's ruling) provides inter alia that it is unlawful for any person to remove or attempt to remove a tenant because the tenant has instituted or intends to institute action which is authorized or required by the ordinance. Thus, it appears that both landlord and tenant are otherwise afforded the necessary rights of action which have been eliminated from the ordinance.
*236 Even without the existence of these other safeguards, the eviction procedures would still have been clearly severable. The Supreme Court of New Jersey recently reached this same conclusion after considering a similar problem in Brunetti v. Borough of New Milford, 68 N.J. 576, 350 A.2d 19 (1975). There the court upheld a rent control ordinance despite a finding that the state legislature had preempted certain eviction provisions. The court found that the invalid provisions were "clearly severable" from the remainder of the ordinance.
The Brunetti court cited another New Jersey case which had also found that conflicting eviction provisions would not force the invalidation of an entire rent control ordinance. The court in that case, Inganamort v. Borough of Fort Lee, 120 N.J. Super. 286, 293 A.2d 720 (1972), applied a rationale which is equally appropriate here:
"... [R]ent leveling cannot be said to be so intertwined with control of evictions that the municipal governing body intended both or none. Some control of maximum rents is itself conducive to the purpose of assuring continued occupancy. To be sure, direct control of evictions is an additional and a more direct technique; yet control of maximum rents is itself an intelligent partial solution. It would be unreasonable to assume that the municipality, if aware of its lack of power to control evictions directly, would do nothing at all to meet the emergency it found to exist." Id. at 727.
While the Miami Beach ordinance provides for the establishment of rent ceilings, it also governs the maintenance of so-called Minimum Service Standards. These standards assure the tenant that the landlord will not be allowed to reduce the services provided as of a set date without a valid reason, since he is first required to petition the Director of Rent Control Administration as to proposed reductions in service. Ordinance No. 74-2018, Sections 2-J, 3, 5E & F. Thus, the Miami Beach City Council took even greater steps to alleviate the discerned housing emergency than those taken by the Borough of Fort Lee in the ordinance considered in the Inganamort decision.
While the remedial provisions of the Miami Beach ordinance may have been buttressed by the eviction sections, they were not rendered useless once the latter portions of the ordinance were found to be void. We therefore concur with the trial court's finding that the invalidated sections of the ordinance are severable, and that the remainder of the rent control law is unaffected by the finding of partial invalidity.
The remaining points on appeal are without merit and will not be discussed. Therefore, having carefully considered all points raised in light of the controlling principles of law and for the reasons stated, the trial court's judgment is affirmed.
Affirmed.