489 F.2d 522
 The STATE OF MONTANA, acting By and Through the BOARD OF
ADMINISTRATION OF the PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF the STATE OF MONTANA,
Plaintiff-Appellant,
v.
UNITED STATES of America, and Caspar W. Weinberger, as
Secretary of Health, Education and Welfare of the
United States of America, Defendants-Appellees.
 No. 72-2038.
 United States Court of Appeals, Ninth Circuit.
 Dec. 27, 1973.
 
 Michael J. Hughes, Sp. Asst. Atty. Gen., Robert L. Woodahl, Atty. Gen., State of Montana, Helena, Mont., for plaintiff-appellant.
 Otis L. Packwood, U.S. Atty., Butte, Mont., Kenneth A. Rutherford, U.S. Dept. of Justice, morton Hollander, Chief App. Section, Robert M. Feinson, Civ. Div., U.S. Dept. of Justice, Washington, D.c., for defendants-appellees.
 Before ALDRICH,* ELY and WALLACE, Circuit Judges.
 ALDRICH, Senior Circuit Judge:
 
 
 1
 This is a test suit for recovery of a tax paid by the State of Montana, assessed upon it by the Secretary of HEW as an employer contribution due, assertedly, on account of fees collected and lawfully retained by a Mr. Howard, a justice of the peace for performing marriage ceremonies. The district court decided in favor of the Secretary, and the State appeals.
 
 
 2
 Montana justices of the peace perform various duties for which statutory fees are set. Effecting a marriage is one of six activities grouped under the final heading, 'Miscellaneous fees.'
 
 
 3
 'Miscellaneous fees. The following miscellaneous fees shall also be collected by justices of the peace, to wit:
 
 
 4
 . . . .ous
 
 
 5
 'For performing the marriage ceremony and returning certificate to clerk of the district court, five dollars.'
 
 
 6
 Montana Rev.Code 25-304 (1947).[1] Howard, and some other[2] justices of the peace are paid salaries and are required to remit to the State all fees collected except those listed as miscellaneous fees. Mont.Rev.Code 25-305 (1947). The issue in this case is whether Howard's thus retained fees are to be regarded as wages received by him qua State employee or, as the State contends, are earnings with which it is unconnected.
 
 
 7
 Pursuant to the Social Security Act, 42 U.S.C. 410(a)(7), 418, and a responsive agreement between the Secretary and Montana, the State is required to pay an amount equal to the sum of the employer's and employee's taxes which would be imposed with respect to the wages paid the State's employees if the services were employment within the meaning of 42 U.S.C. 418. The State does not question that a justice of the peace is an employee under this definition. It takes the position, however, that because performing a marriage ceremony is optional with the justice, and is 'a service for the persons whose marriage he is solemnizing . . . the justice is not in the 'employ' of the County.'
 
 
 8
 The fact that a justice of the peace may decline to perform marriages is of little relevancy. That an employee may choose whether or not to do particular work does not change its character if undertaken. We need think only of voluntary overtime, or voluntary assumption of the work of another employee. The test is not the employee's right to refuse the work, but its nature if performed.
 
 
 9
 Equally, from whom he receives payment should not control. It must be obvious that an employer may choose whatever method of effecting compensation he sees fit, see 20 C.F.R. 404.1026 (1973), and it should make no difference whether the third party pays the employer, who, in turn, compensates the employee, or whether the third party, at the employer's direction, pays the employee himself. Nor, in the light of the statutory scheme, can there by any doubt of the fact that the payment here is made at the State's direction.
 
 
 10
 Particularly unsupportive of its position is the State's argument that a justice of the peace can waive his fee. We note that the statute does not state this but, if anything, is cast in the opposite direction. See 25-304, ante. But it may be conceded that since the justice is not required to remit or, currently, to report miscellaneous fees, no one will complain if he chooses to perform the service for nothing. Again, however, the fact that a justice may refuse payment, just as he may refuse to undertake the activity in the first place, does not affect the character of either the activity or the payments he in fact receives.[3]
 
 
 11
 We come to the only possibly troublesome question, the State's contention that the work is a purely personal venture. The two analogies the state makes to certain independent contractors are not helpful. We see a substantial difference between the justice's statutorily authorized activity and that of a golf professional employed by a club who, in addition to his club duties, is permitted to give private instruction, Ridge Country Club v. United States, 135 F.2d 718 (7th Cir. 1943), or that of a taxi-driver who, for a fixed rental, leases a cab from a company, Magruder v. Yellow Cab Co., 141 F.2d 324 (4th Cir. 1944).
 
 
 12
 Effecting a marriage is very much a state function. See Mont.Rev.Code 48-102 through 48-124. The state's interest in the performance of this function is not only statutorily defined, but would seem self-evident. See In re Shun T. Takahashi's Estate, 113 Mont. 490, 129 P.2d 217 (1942). We may doubt whether a member of the public who pays a fee to a justice of the peace for the entry of a judgment by confession or for furnishing the transcript of appeal (24-301), or who pays a fee for performing a marriage ceremony or for furnishing copies of papers on file (25-304), thinks of the justice as a state employee in the first two instances, but not as one in the latter, or even whether the justice himself makes this distinction.
 
 
 13
 It is true that members of the clerical profession, and certain others, are allowed to perform marriage ceremonies, Mont.Rev.Code 48-116 (1947), and that clerics, vis-a-vis the state, may well be thought of as independent contractors. We see no necessary inconsistency. Indeed, in addition to the fact that the justices are on the state's regular payroll, and that their marriage performing powers arise directly out of their position as state employees, they are controlled in a significant manner in which the clerics are not, viz., they are limited to a $5 maximum charge. The clerics can charge what they please. There is, accordingly, as to the justices a significant incremental element of control.
 
 
 14
 In sum, we conclude that Mr. Howard was performing an employer-oriented service, and that the marriage fees he was allowed to retain were part of his overall compensation.
 
 
 15
 Affirmed.
 
 
 
 *
 Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation
 
 
 [1]
 The other listed activities are furnishing copies of papers on file, taking acknowledgments, jurats and giving attention to lost property pursuant to statute (20-410)
 
 
 [2]
 Now, seemingly, all other. Montana Const. art. VII 5 (1972). See Justice Court Reform in Montana, 34 Mont.L.Rev. 122, 135 (1973)
 
 
 [3]
 We need not concern ourselves with the State's argument that it has no means of knowing how many fees a justice did or did not receive. We have no doubt that the State is capable of providing a reporting system if, under the law, it is obliged to make contributions