**STATE OF NEW MEXICO,**
**Plaintiff-Appellant,**

v.

**Caspar E. WEINBERGER, Secretary of Health, Education, and Welfare,**
**Defendant-Appellee.**

**No. 74–1560.**

United States Court of Appeals,
Tenth Circuit.

Argued May 1, 1975.

Decided June 12, 1975.

Rehearing Denied July 16, 1975.

William C. Schaab, Sp. Asst. Atty. Gen., Albuquerque, N. M. (Richard C. Minzner, Albuquerque, N. M., on the brief), for plaintiff-appellant.

Harris L. Hartz, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

After duly exhausting all available administrative remedies, the State of New Mexico (State) commenced this action in the district court pursuant to 42 U.S.C. § 418(t) seeking a redetermination of the correctness of an assessment made by the Commissioner of Social Security, a delegate of the defendant, against the Regents of the University of New Mexico, in respect to Social Security contributions allegedly due and owing upon certain payments made by the University to an employee under its established sick leave plan. This appeal follows the Trial Court's entry of Summary Judgment in favor of the Secretary of Health, Education and Welfare (Secretary).

The facts are not in dispute. In accordance with 42 U.S.C. § 418 and § 5–7–1 et seq., N.M.S.A., 1953 Comp., the parties entered into an agreement for coverage of employees of the State and its political subdivisions, including the University of New Mexico, under the Social Security Act. The University entered into an agreement with the Public Employees Retirement Board, effective January 1, 1955. Since 1949, the University has had in effect a "plan" or system for determining payments to its employees who are absent from work because of sickness or accident disability. The amount of payments to each employee under the plan are recorded and separately stated on the University's books and records as "sick pay" and are made from a regular salary account.

During 1968, Mr. Galloway, a University employee, was absent from work because of illness. As a non-exempt employee of several years standing, he had earned under the Plan sufficient sick leave to cover the period of his illness and the University paid him $324.97 as sick leave payments. That amount was computed under the applicable sick leave policy as his regular straight-time rate of pay times the number of hours for which he qualified for sick leave under the policy. Mr. Galloway's hours of sick leave were duly posted to the "payroll time report" and the amount paid as sick leave was reflected on the related "payroll register."

The University did not make a Social Security contribution with respect to these payments on the grounds that such payments were excluded from "wages" under 42 U.S.C. § 409(b). The Social Security Administration thereafter assessed $28.60 in respect to these payments made to Galloway.

On appeal the sole issue is whether the trial court erred in relying upon an unauthorized and improper interpretation made by the Secretary that the above payments did not qualify to be excluded from "wages" under 42 U.S.C. § 409(b).

The Social Security Act, at least insofar as it applies to *private* employers and their employees, is administered by the Internal Revenue Service (collecting funds from employers and employees) and the Department of Health, Education and Welfare (paying benefits). Both the rate of tax to be paid, and the rate of benefit to be received are keyed to "wages" earned by the employee. The term "wages" used in this computation is defined under both the "IRS statutes" (26 U.S.C. § 3121) and under the "HEW statutes" (42 U.S.C. § 409). Both statutes provide that "wages" shall not

include "payments made to an employee under a plan on account of sickness."[1]

While State employees are not covered by the Federal Insurance Contributions Act,[2] 26 U.S.C. § 3101 *et seq.,* the States are permitted to contract with HEW to establish analogous programs under 42 U.S.C. § 418. Of importance to the instant dispute, 42 U.S.C. § 418(e)(1) provides:

(e)(1) Each agreement under this section shall provide—

(A) that the State will pay to the Secretary of the Treasury, at such time or times as the Secretary of Health, Education, and Welfare may by regulations prescribe, *amounts equivalent to the sum of taxes which would be imposed* by sections [3101 and 3111 of Title 26 I.R.C. of 1954] if the services of employees covered by the agreement constituted employment as defined in section [3121 of Title 26, I.R.C. of 1954]; and

(B) that the State will comply with such *regulations relating to payments and reports as the Secretary of Health, Education, and Welfare may prescribe* to carry out the purposes of this section. (Emphasis added).

42 U.S.C. § 418(i) further provides:

(i) Regulations of the Secretary [HEW] to carry out the purposes

of this section *shall be designed to make the requirements imposed on States pursuant to this section the same, so far as practicable, as those imposed on employers* pursuant to this subchapter and [by Sections 3101 *et seq.,* 6651(a) and 3504 of Title 26, I.R.C. of 1954]. (Emphasis added).

The instant controversy arises from the fact that in assessing contributions to be paid in by private employers the Commissioner of Internal Revenue has construed the "sick pay" exclusion from "Wages" differently than has the Secretary of HEW in assessing public employers.[3]

It is not disputed that the payment made here was made pursuant to a "plan or scheme", and hence if the interpretation issued by the Commissioner of Internal Revenue, *supra,* is controlling, the HEW assessment must be reversed.

In summary, the State contends that the above interpretation made by the Social Security Administration is both irrelevant and unauthorized; that while "wages" are defined under both §§ 3121 and 409, the latter definition is *relevant only for the purpose of determining entitlement to benefits* under § 401; that it is made clear by 42 U.S.C. § 418(e)(1)(A) that an employer's liability for contributions (either a private or *public* employer) is to be determined solely under § 3121 of the I.R.C.; that

---

1. 26 U.S.C. § 3121(a)(2)(B) provides, inter alia:

(a) Wages—For purposes of this chapter, the term "wages" means all remuneration for employment . . . .; except that such term shall not include—

(2) the amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally . . . on account of—

(B) Sickness or accident disability . . . .

42 U.S.C. § 409(b) is substantially the same.

2. Employment by a State is excluded from the definition of "employment" by 26 U.S.C. § 3121(b)(7).

3. Rev.Rul. 65–275 (1965) simply held that payments for earned sick leave made to an employee for periods of absence from work on account of illness *pursuant to a plan or system* of the type described in § 3121(a)(2) of the F.I.C.A. are excluded from "wages" and are not subject to the taxes imposed under that Act.

SSR 72–56 (1972), on the other hand, held that even if there exists an established sick leave plan, payments under such a plan by a State employer would be treated as "wages" under the Social Security Act unless it is shown *in addition* that the State has statutory or other legal authorization to make payments to employees *solely on account of sickness* (as distinguished from authorization to merely *continue salary* payments during periods of absence due to illness.)

the Secretary of HEW is not authorized to issue rulings under I.R.C. § 3121 and has, in fact, been directed under 42 U.S.C. § 418(i) to conform his regulations—as to the requirements to be placed on the States—to those of the Commissioner of Internal Revenue; and that to sustain the Secretary's interpretation would be to allow inconsistent tax policies to co-exist, discriminating between private and public employees when Congress clearly intended them to be treated equally and uniformly.

The Secretary would seem to concede that because of the reciprocal responsibilities ascribed the IRS and the HEW in the case of *private* employers (i. e., that the two services are working on opposite sides of the same coin in collecting taxes and paying benefits) that it would be contrary to the spirit of the Act for those agencies to have interpretations of the term "wages" which differed significantly. Amidon v. Flemming, 285 F.2d 718 (1st Cir. 1960).

Unlike the bifurcated system in respect to private employers, however, the Secretary maintains that as to *public* employers, HEW is the *sole* administrator of the Act. Hence, while payments by the State under a § 418 plan are to be made at an "equivalent" *rate* to the taxes imposed on private employers under § 3121 this does not necessarily mean that HEW is bound by the definition of "wages" established in the private employment sector, nor that the IRS is the only agency empowered to interpret such term. HEW is the agency which assesses the States for payments due [§ 418(q)]. It is, furthermore, the agency possessing the experience and expertise in administering the statute. Its interpretation, according to the Secretary, should therefore be accorded due weight.

In further support of the contention that HEW is authorized to make the contested interpretation, the Secretary contends that: (a) the language of § 418(a) indicates that the definition of "wages" under § 409 does not exist merely for purposes of computing benefits to be paid; (b) that the legislative history of the 1958 amendment to § 409(i) indicates that Congress viewed the definitions of Sections 409 and 410 as being applicable in computing *payments due* under § 418(e), citing State of Montana v. United States, 489 F.2d 522 (9th Cir. 1973); and (c) that this 1958 amendment implicitly recognized the practice of HEW of including as "wages", continuation of salary during a State employee's absence from work because of sickness, citing Graves v. Gardner, 280 F.Supp. 666 (S.D.N.Y.1968).

While we have been presented no cases directly in point with the challenge presented here, we think that under the Social Security Act the Secretary has been given the authority, albeit limited, to interpret "wages" in respect to contributions to be made by public employers. In addition to the arguments made by the Secretary in his brief, we find support for this conclusion in 42 U.S.C. § 418(i). As noted, *supra,* that section, entitled "Regulations" provides that any regulations made by the Secretary to "carry out the purposes" of Section 418 shall be designed to "make the requirements imposed on States . . . the same, *so far as practicable,* as those imposed on [private] employers . . . ." It would seem clear from this language that where it is not "practicable", the Secretary may issue regulations as to the requirements to be placed upon the States which are not "the same" as those placed on private employers, i. e., the limitation here implies the power.

Having found the existence of authority in the Secretary, in limited situations, to make interpretations which may result in private and public employers not being treated the "same" insofar as their liability for contributions are concerned, we cannot hold, under the circumstances of this case, that the Secretary's decision that this was an instance where it was not "practicable" to conform his Regulation to those promulgated under § 3121, or to interpret wages differently for public employers, was not reasonable. Udall v. Tallman, 380 U.S. 1, 85 S.Ct.

792, 13 L.Ed.2d 616 (1965); Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966).

The Secretary's "variant" interpretation was here predicated apparently upon a literal interpretation given to § 409(b), i. e., that to be excluded from "wages", sick leave payments must be paid solely *on account of sickness*. Such payments by a State—as opposed to a mere *continuation of wages* during periods of absence due to illness—would allegedly amount to an improper "donation" of State funds absent express *legal authority* for the State to appropriate funds for such use.[4] *See*, SSR 72–56, *supra*. Such a consideration would not be of concern in the administration by the IRS of the provisions taxing private employers; hence the need for different treatment of sick leave payments in respect to public employers, i. e., the additional requirement imposed upon the States that such authorization in fact exists.

We think this constitutes a situation wherein it is not "practicable" for private and public employers to be treated "the same" under the Act as to the requirements imposed upon them.

In Gardner v. Hall, 366 F.2d 132 (10th Cir. 1966), we held:

> The Secretary has, without question, the authority and the duty to pierce any fictitious arrangements . . . when the arrangement is not in accord with reality.

366 F.2d 132 at 135.

If, by analogy, the State here has no *authority* to make "payments on account of sickness" such as would qualify to be excluded from "wages" under the Act, we hold that the Secretary has the authority to bar the exclusion from "wages" of such payments irregardless of how they are denominated or treated under the State's "plan".

Finally, while the State's argument for consistency of interpretation is appealing and the result desirable, such consistency has not always been found controlling where overriding considerations exist. *Compare*, Ludeking v. Finch, 421 F.2d 499 (8th Cir. 1970). We find F.C.C. v. American Broadcasting Co., 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699 (1954) to be inapposite. Our holding is consistent with the Congressional policy underlying Federal Social Security legislation which requires courts to interpret the Act liberally, and to resolve any doubts in favor of coverage. Rasmussen v. Gardner, 374 F.2d 589 (10th Cir. 1967); Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir. 1965).

Affirmed.

---

4. While the State categorizes HEW's concern in this regard as "absurd quibble" and an "erroneous notion", it does not specifically contend that under New Mexico law the State is empowered to make payments "solely on account of sickness." We also note that the New Mexico Attorney General's opinion dated February 15, 1971 (T.R. Vol. I, Exhibit D), is supportive of HEW's contention. On a question of state law, courts generally give careful consideration to, and regard as highly persuasive, an opinion of the State's Attorney General where there is no other State precedent directly in point. 7 Am.Jur.2d, Attorney General § 8.