The Honorable Nevin Smith Secretary, Department of Administration
Mr. Thomas H. Locker County Comptroller Orange County
QUESTION:
Do noncharter counties possess sufficient legal authority to adopt an ordinance authorizing payments `on account of sickness' to county employees?
SUMMARY:
In the absence of any provision of general or special law restricting or prohibiting a noncharter county from adopting a home rule ordinance relating to payments `on account of sickness' to its employees (no such provision of general or special law having been brought to the attention of this office), and until judicially or legislatively determined otherwise, noncharter counties have the authority to proceed under their home rule power to enact an ordinance providing for payments `on account of sickness' to county employees. Whether such an ordinance, however, constitutes sufficient legal authorization for the purposes of42 U.S.C. § 409(b) or other provisions of the Social Security Act and implemental regulations and rulings of the Department of Health and Human Services so as to exclude such payments from the definition of `wages' contained in the Social Security Act or ch. 650, F.S., is a matter which must be determined by the federal agency charged with the administration of the Social Security Act or the federal courts.
You state that the Department of Administration, in response to two informal advisory opinions of this office dated March 8, 1979, and June 18, 1979, adopted a rule regarding the authority of certain governmental entities to make payments `on account of sickness' within the purview of the Social Security Act and the implementing regulations and rulings of the Department of Health and Human Services, see 42 U.S.C. § 409(b); SSR 72-56. Rule 22C-2.02, F.A.C., provides in pertinent part that `[i]n order to exclude payments `on account of sickness' a reporting unit must have the constitutional or statutory authority to expend public funds `on account of sickness.' . . . (2) State agencies, nonchartered counties, special districts . . . — These governmental entities at present lack the required constitutional or statutory authority to expend public funds for payments to employees `on account of sickness." You state that based upon this rule the Division of Retirement of the Department of Administration has disallowed Orange County's deduction of `certain sick leave' payments from the wages of county employees when calculating the county's monthly contribution to the Social Security Contribution Trust Fund. You therefore inquire as to the authority of a noncharter county to make payments to its employees `on account of sickness' within the meaning and scope of the Social Security Act and implementing regulations.
Section 650.05, F.S., authorizes each political subdivision of the state to submit for approval by the state agency (designated in s.650.02(4), F.S., as the Division of Retirement of the Department of Administration) a plan for extending benefits of Title II of the Social Security Act, in conformity with the applicable provisions of said act, to the employees of such political subdivision. See s. 650.01, F.S., stating that it is the policy of the Legislature to extend to employees of the State and itspolitical subdivisions the basic protection afforded to others in the Social Security Act; and s. 650.02(2) and (3) which, respectively, define `employment' to mean any services performed by an employee in the employ of the state or any politicalsubdivision thereof, and `employee' to include an officer of the state or political subdivision thereof. And see s. 650.03, F.S., specifically s. 650.03(1)(e), F.S., which provides that the federal-state agreement shall provide that all services which constitute employment (as defined in s. 650.02), are performed in the employ of a political subdivision of the state and are covered by a plan which is in conformity with the terms of the agreement and has been approved by the state agency under s. 650.05, shall be covered by the agreement. See also s. 121.051(1) and (3), F.S., which, respectively, provides for participation in the Florida Retirement System and states that social security coverage shall be provided for all officers and employees who become members of the Florida Retirement System under subsections (1) or (2). A county whose plan has been approved by the division is required to pay into the Social Security Contribution Trust Fund with respect to wages (as defined in s. 650.02), at such time as the division may by regulation prescribe, contributions in the amounts and at the rates specified in the applicable agreement entered into by the division with the Federal Security Administrator under s.650.03, F.S. Section 650.05(3)(a) and (b), F.S. And see s. 650.06, F.S., establishing the Social Security Contribution Trust Fund to receive contributions collected under ss. 650.04 and 650.05 and other designated moneys and properties and from which payments are made to the Secretary of the Treasury in accordance with an agreement entered into under s. 650.03 and the Social Security Act and other specified purposes.
The instant inquiry concerns payments made to employees by a noncharter county `on account of sickness' and the inclusion or exclusion of such payments in calculating an employee's wages. `Wages' are defined in s. 650.02(1), F.S., to mean all remuneration for employment (as defined in s. 650.02(2), F.S.), except that such term shall not include that part of remuneration which, even if it were for `employment' within the meaning of the Federal Insurance Contributions Act, would not constitute `wages' within the meaning of that act. See also s. 650.02(3), F.S., defining `employee' to include an officer of the state or political subdivision thereof. Employees of the state and its subdivisions are not covered by the Federal Insurance Contributions Act, 26 U.S.C. § 3101, et seq., see26 U.S.C. § 3121(b)(7), excluding employment by a state from the act's definition of `employment'; the states, however, are permitted to contract with the federal government to establish analogous programs under 42 U.S.C. § 418. Under the provisions of the Social Security Act, specifically 42 U.S.C. § 409(b), `[t]he amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally (or for his employees generally and their dependents) or for a class or classes of hisemployees (or for a class or classes of his employees and their dependents) on account of (1) retirement, or (2) sickness or accident disability, or (3) medical or hospitalization expenses in connection with sickness or accident disability, or (4) death' (emphasis supplied) are expressly excluded from the definition of `wages' contained therein. A similar exclusion for payments made `on account of sickness' is contained in26 U.S.C. § 3121(a)(2)(b) defining `wages' for the Federal Insurance Contributions Act. The exclusion for payments `on account of sickness' contained in 42 U.S.C. § 409(b), however, has been interpreted by the Secretary of the Department of Health, Education and Welfare (now the Department of Health and Human Services) to be available to states and their political subdivisions only when such entities possess `statutory or otherlegal authorization to make payments to employees solely on account of sickness.' (Emphasis supplied.) See Social Security Ruling 72-56 (1972) and State of New Mexico v. Weinberger,517 F.2d 989, 991 n. 3 (10th Cir. 1975), cert. denied, 423 U.S. 1051
(1976), in which the court referred to S.S.R. 72-56, stating:
 SSR 72-56 . . . held that even if there exists an established sick leave plan, payments under such a plan by a state employer would be treated as `wages' under the Social Security Act unless it is shown in addition that the State has statutory or other legal authorization to make payments to employees solely on account of sickness (as distinguished from authorization to merely continue salary payments during periods of absence due to illness). (Emphasis supplied by court.)
See also Social Security Ruling 78-2 (1978), stating that since there was no authority for a state to make payments solely on account of accident disability, as distinguished from authorization to continue salary payments during periods of absence due to such injury or illness, such payments made under state laws are not payments on account of disability but are a continuation of salary and therefore not covered by the state's42 U.S.C. § 418 agreement. The court in Weinberger, supra, concluded that the Secretary of HEW had the authority, albeit limited, to interpret `wages' in respect to contributions to be made by public employers even though that interpretation differed from the construction of `wages' by the Commissioner of Internal Revenue (both 26 U.S.C. § 3121(a)(2)(B) and 42 U.S.C. § 409(b), excluding payments made `on account of sickness' from the definition of wages), resulting in private and public employers not being treated the `same' insofar as their liability for contributions are concerned. 517 F.2d at 992. See also Graves v. Gardner, 280 F. Supp. 666 (S.D. N.Y. 1968), and Miller v. Metropolitan Dade County, 386 So.2d 1248 (3 D.C.A. Fla., 1980), affirming the trial court's summary judgment holding that Dade County was required to make social security deductions from salary payments made to its employees during their absence from work because of sickness for the reasons outlined in State of New Mexico v. Weinberger, supra, and Graves v. Gardner, supra.
A legal determination, however, as to what payments constitute wages within the context of 42 U.S.C. § 409 and the rules and regulations adopted thereunder is ultimately a judicial question (see Kore v. Celebrezze, 342 F.2d 638, 640 (7th Cir. 1965)) beyond the scope of this office's duties and responsibilities. Any determination as to what constitutes sufficient `statutory or other legal authorization to make payments to employees solely on account of sickness for the purposes of 42 U.S.C. § 409 or whether an ordinance adopted by a noncharter county authorizing such payments constitutes sufficient legal authorization is a matter which must be ultimately considered and passed on by the federal agency charged with the administration of the Social Security Act or by the federal courts rather than by this office. Your inquiry, however, concerns the powers possessed by a noncharter county under the state constitution and statutes, a matter which this office may appropriately consider. This opinion is therefore expressly limited to a consideration of the extent of powers possessed by a noncharter county and no opinion is expressed herein regarding the legal sufficiency of a county ordinance providing for payments to county employees `on account of sickness' to exclude such payments from the definition of wages contained in 42 U.S.C. § 409.
Section 1(f), Art. VIII, State Const., provides that noncharter counties `shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law . . . .' Subsequent to the adoption of the 1968 Constitution, the Legislature enacted s. 125.65, F.S. 1969, which provided:
 In accordance with the provisions of s 1, Article VIII of the state constitution, counties shall have all powers of local self-government, including governmental, corporate and proprietary powers, to enable them to conduct county government, perform county functions, and render county services, and may exercise any such power for county purposes, and the health, safety or welfare of its citizens not inconsistent with general or special law. (Emphasis supplied.)
Subsection (3) of the statute stated that the provisions of the section `shall be so construed as to secure for the counties thebroad exercise of home rule powers granted by the constitution.' (Emphasis supplied.) The statute was amended in 1970 to provide that the legislative powers referred to in the statute `shall be exercised by the board of county commissioners by the enactment of county ordinances pursuant to law.' See s. 125.65, F.S. (1970 Supp.), as amended by s. 3, ch. 70-452, Laws of Florida. Although s. 125.65 was repealed by ch. 71-14, Laws of Florida, such repeal was not to be deemed to repeal or limit the powers of the board of county commissioners granted therein, but `shall be deemed to continue and expand such powers and remove certain limitations heretofore prescribed by law.' The legislative intent in enacting ch. 71-14 as expressed in s. 6 of the act was `to secure for the counties the broad exercise of home rule powers authorized by the constitution.' This office when considering the language in s. 3(2), ch. 71-14, which purports to continue and expand the powers contained in those statutory sections deleted by s. 3(1), ch. 71-14, has concluded that counties may continue to exercise those powers formerly provided for in the sections repealed. See, e.g., AGO's 073-487 and 072-287.
Chapter 71-14, Laws of Florida, substantially reworded s. 125.01, F.S., to provide that the legislative and governing body of a county shall have the power to carry on county government. See s. 1, ch. 71-14 and s. 125.01, F.S. (1980 Supp.), which contains the same provision. The statute also provides, inter alia, that to the extent not inconsistent with general or special law, this power to carry on county government `shall include, but shall not be restricted to, the power to . . . [a]dopt ordinances . . . necessary for the exercise of its powers and . . . [p]erform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law.' Section125.01(1)(t) and (w), F.S. (1980 Supp.). See also s. 125.01(1)(u), F.S. (1980 Supp.), authorizing the legislative and governing body of the county to create civil service systems and boards. And see
s. 125.01(3)(a), F.S. (1980 Supp.), which provides that the powers enumerated in s. 125.01 shall not be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such enumerated powers, including the authority to employ personnel, expend funds and to enter into contractual obligations; and s. 125.01(3)(b), F.S., which states that the provisions of s. 125.01 `shall be liberally construed to effectively carry out the purposes of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution.' Cf. ch. 71-29, Laws of Florida, which repealed a number of population acts and which stated in s. 1 that `[t]he constitution and general laws of Florida have provided home rule powers to municipalities and counties, except as limited by law [and] . . . [i]t is also the intent of the Legislature to enact additional general legislation to expand the home rule powers of local government.'
In Speer v. Olson, 367 So.2d 207, 211 (Fla. 1978), the Florida Supreme Court considered the powers of noncharter counties in light of the provisions of s. 125.01 and the Florida Constitution and stated:
 The first sentence of Section 125.01(1), Florida Statutes (1975), grants to the governing body of a county the full power to carry on county government. Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power. There is no statute, general or special, which either specifically authorizes or restricts Pasco County with respect to the issuance of general obligation bonds to acquire sewage and water systems and to pledge for their payment the net revenues to be derived from the operation of such facilities and ad valorem taxes levied within the area of the Unit. The first sentence of Section 125.01(1), Florida Statutes (1975), therefore, empowers the county board to proceed under its home rule power to accomplish this purpose. (Emphasis supplied.)
Cf. State v. Orange County, 281 So.2d 310 (Fla. 1973), in which the Court noted that the intent of the Legislature in enacting ch. 125 was to obviate the necessity of going to the Legislature to get a special act passed authorizing the issuance of certain types of bonds, stating that the county commission under the authority of the 1968 Constitution and enabling statutes was authorized to pass an ordinance for such purpose because there was nothing inconsistent in general or special law.
I am not aware of any general or special law which specifically authorizes or restricts a noncharter county to make such payments on account of sickness to its personnel nor has any such statutory provision been brought to the attention of this office. Cf. s.112.08, F.S., which authorizes counties to provide and pay out of its available funds all or part of the premium for life, health, accident and hospitalization insurance for its officers and employees, and to self insure any such plan for health, accident and hospitalization coverage. Nor does my examination of the provisions of ch. 650, F.S., reveal any provision relating to the authority of a noncharter county to adopt a home rule ordinance authorizing or providing for such payments `on account of sickness' to its employees. Thus in view of the Florida Supreme Court's decision in Speer v. Olson, supra, regarding the powers of self government of noncharter counties, I am compelled to conclude that s. 125.01, F.S., implements the provisions of s. 1(f), Art. VIII, State Const., granting noncharter counties the full power to carry on county government. Thus, as the court stated in Speer, unless the Legislature has preempted a particular subject relating to county government by either general or special law, the governing body of a county, by reason of s. 125.01, has the authority to act through the exercise of its home rule powers. To the extent that previous opinions of this office are to the contrary, they are hereby superseded and modified. Your inquiry concerns the validity of Rule 22C-2.02, F.A.C. This office has no authority to comment upon the validity of the rules of the Department of Administration as such rules are presumptively valid. Cf. Florida Citrus Commission v. Golden Gift, Inc.,91 So.2d 657 (Fla. 1956); 4245 Corporation, Mother's Lounge, Inc. v. Division of Beverages, 348 So.2d 934 (1 D.C.A. Fla., 1977). However, as the department apparently adopted Rule 22C-2.02, F.A.C., in response to an informal opinion issued by this office relating to noncharter counties, the department may wish to reexamine and amend the rule in light of this opinion.
Prepared by: Joslyn Wilson, Assistant Attorney General