367 So.2d 207 (1978)
Roy M. SPEER et al., Appellants,
v.
Mike OLSON et al., Appellees.
Nos. 54034, 54151 and 54152.
Supreme Court of Florida.
December 21, 1978.
Rehearing Denied February 16, 1979.
*208 David A. Maney of Gordon & Maney, Tampa, and Leonard W. Cooperman, St. Petersburg, for appellants.
Gerald A. Figurski, Pasco County Atty., Port Richey, and Judson Freeman, Jr. of Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, for appellees.
ADKINS, Justice.
This is an appeal from a Final Judgment of the Circuit Court of Pasco County validating general obligation bonds issued by a Pasco County Municipal Service Taxing Unit for acquisition of sewer and water systems. We have jurisdiction. Article V, Section 3(b)(2), Florida Constitution.
The Board of County Commissioners of Pasco County enacted an ordinance creating a Municipal Service Taxing Unit to be known as West Pasco Water and Sewer Unit (hereinafter referred to as the "Unit"). The Unit was composed of the entire unincorporated area of the county. The commissioners called a special election by the residents of the Unit for the purpose of securing their approval for the issuance of $41.5 million general obligation bonds by the Unit. The proposed bond issue passed by a majority of 79 percent.
The appellants (taxpayers) initiated suit in circuit court to contest the legality of the election and its results. Immediately thereafter, Pasco County filed a complaint seeking validation of the bonds. The appellants intervened in the latter suit and sought dismissal contending, as in their earlier action, that the commissioners' use of their emergency powers to establish the Unit was invalid and that the issuance of general obligation bonds for the expansion of sewer and water systems was improper. The actions were consolidated.
The circuit court held the election was valid and validated the bonds. The appellants (taxpayers) have appealed to this Court.
The first question is whether Chapter 125, Florida Statutes, could be utilized by the county to authorize general obligation bonds for the acquisition of sewer and water systems. The pertinent portions of Chapter 125 read as follows:
125.01 Powers and duties. 
(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not *209 inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
* * * * * *
(k) Provide and regulate waste and sewage collection and disposal, water supply, and conservation programs.
* * * * * *
(q) Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. It is hereby declared to be the intent of the Legislature that this paragraph is the authorization for all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of Article VII, Section 9(b) of the State Constitution.
* * * * * *
(r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments, borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. There shall be no referendum required for the levy by a county of ad valorem taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit.
125.011 Definitions.  As used in ss. 125.011-125.021.
(1) "County" means any county operating under a home rule charter adopted pursuant to ss. 10, 11 and 24 of Art. VIII of the Constitution of 1885, as preserved by Art. VIII, s. 6(e) of the Constitution of 1968, which county, by resolution of its board of county commissioners, elects to exercise the powers herein conferred. Use of the word "county" within the above provisions shall include "board of county commissioners" of such county. (2) "Project" includes any one or any combination of two or more of the following: Harbor, port, shipping, and airport facilities of all kinds and includes, but is not limited to, harbors, channels, turning basins, anchorage areas, jetties, breakwaters, waterways, canals, locks, tidal basins, wharves, docks, piers, slips, bulkheads, public landings, warehouses, terminals, refrigerating and cold storage plants, railroads and motor terminals for passengers and freight, rolling stock, car ferries, boats, conveyors and appliances of all kinds for the handling, storage, inspection and transportation of freight and the handling of passenger traffic, airport facilities of all kinds for land and seaplanes, including, but not limited to, landing fields, water areas for the landing and taking off of aircraft, hangars, shops, buses, trucks, and all other facilities for the landing, taking off, operating, servicing, repairing, and parking of aircraft, and the loading and unloading and handling of passengers, mail, express and freight; administration buildings, toll highways, tunnels, causeways and bridges connected therewith or incident or auxiliary thereto, and may include all property, rights, easements, and franchises relating to any such project and deemed necessary or convenient for the acquisition, construction, purchase, or operation thereof.
125.012 Project facilities; general powers and duties.  Any county and the board of county commissioners thereof shall have the power, in addition to the powers otherwise conferred:
(1) To construct, acquire, establish, improve, extend, enlarge, reconstruct, equip, *210 maintain, repair, and operate any project as defined in s. 125.011, either within or without the territorial boundaries of the county.
125.66 Ordinances; enactment procedure; emergency ordinances; rezoning ordinances or resolutions. 
(1) In exercising the ordinance-making powers conferred by s. 1, Art. VIII of the State Constitution, counties shall adhere to the procedures prescribed herein.
(2) The regular enactment procedure shall be as follows: The board of county commissioners at any regular or special meeting may enact or amend any ordinance, except as provided in subsection (5), if notice of intent to consider such ordinance is given at least 15 days prior to said meeting, excluding Sundays and legal holidays. Such notice shall be made by the clerk of the board of county commissioners and shall be kept in a separate book which shall be open to public inspection during the regular business hours of his office. Certified copies of ordinances or amendments thereto enacted under this regular enactment procedure shall be filed with the Department of State by the clerk of the board of county commissioners within 10 days after enactment by said board and shall take effect upon receipt of official acknowledgment from that office that said ordinance has been filed. However, any ordinance may prescribe a later effective date.
(3) The emergency enactment procedure shall be as follows: The board of county commissioners at any regular or special meeting may enact or amend any ordinance, except an ordinance or resolution which rezones private real property or an ordinance or resolution which enacts or amends land use plans, with a waiver of notice requirements by a four-fifths vote of the membership of such commission, declaring that an emergency exists and that the immediate enactment of said ordinance is necessary. Certified copies of ordinances or amendments thereto enacted under this emergency enactment procedure shall be filed with the Department of State by the clerk of the board of county commissioners as soon after enactment by said board as is practicable. An emergency ordinance enacted by the postal authorities of the Government of the United States for special delivery by registered mail to the Department of State.
(4) Notice as herein set forth shall mean, in addition to the provisions herein contained, publication of the title of the ordinance or amendment to be considered in a newspaper of general circulation within the county. Said notice shall state the substance of the contemplated ordinance, the same as required by s. 10, Art. III of the State Constitution.
Proceedings to validate governmental securities determines only issues going directly to the power to issue the securities and the validity of the proceedings with relation thereto. A petition for validation of governmental securities brings into question the right and authority of the taxing unit to issue the bonds, together with all proceedings taken in connection with their issue. The purpose of a judgment validating and confirming bonds is to put in repose any question of law or fact that may be subsequently raised affecting the validity of the bonds. Collateral matters are not adjudicated in bond validation proceedings. See State v. City of Miami, 103 So.2d 185 (Fla. 1958), and authorities cited therein.
Chapter 125, Florida Statutes, implements the provisions of Art. VIII, Section 1(f), Florida Constitution (1968), which gives counties not operating under county charters, such as Pasco County, such powers of self-government as are provided by general or special law. This provision of the Florida Constitution also authorizes the board of county commissioners of such a county to enact ordinances in the manner prescribed by Chapter 125, Florida Statutes, which are not inconsistent with general law.
The intent of the Legislature in enacting the recent amendments to Chapter 125, Florida Statutes, was to enlarge the powers of counties through home rule to govern themselves.
*211 The first sentence of Section 125.01(1), Florida Statutes, (1975), grants to the governing body of a county the full power to carry on county government. Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power. There is no statute, general or special, which either specifically authorizes or restricts Pasco County with respect to the issuance of general obligation bonds to acquire sewage and water systems and to pledge for their payment the net revenues to be derived from the operation of such facilities and ad valorem taxes levied within the area of the Unit. The first sentence of Section 125.01(1), Florida Statutes (1975), therefore, empowers the county board to proceed under its home rule power to accomplish this purpose. This was done by the enactment of the ordinance and the adoption of the bond resolution after the bond election.
The precise approach used in authorizing the proposed bonds by Pasco County was previously employed in the case of State v. Orange County, 281 So.2d 310 (Fla. 1973). In that case Orange County, a noncharter county, enacted a home rule ordinance authorizing it to acquire and construct county capital projects and to issue revenue obligations to finance the cost thereof, payable from race track funds and jai alai fronton funds. This Court found that there was no prohibition to be found in the Florida Constitution or general or special law, but, on the contrary, that there was delegated authority for implementing by ordinance the issuance of the proposed bonds. This Court noted that the intent of the Legislature in enacting Chapter 125 was to obviate the necessity of going to the Legislature to get a special act passed authorizing bonds of the type proposed:
"Instead of going to the Legislature to get a special bill passed authorizing such building fund revenue bonds, the Orange County Commissioners under the authority of the 1968 Constitution and enabling statutes now may pass an ordinance for such purpose, as they did in this case, because there is nothing inconsistent thereto in general or special law. On the contrary, there is ample delegated authority for such purpose. The object of Article VIII of the 1968 Constitution was to do away with the local bill evil to this extent."
As a result of this decision, a great many county capital projects have been financed throughout the state by using the device of a home rule ordinance.
Furthermore, in the case of Tucker v. Underdown, 356 So.2d 251 (Fla. 1978), the Board of County Commissioners of Brevard County, Florida, established six municipal service taxing units pursuant to Section 125.01(1)(q), Florida Statutes (1975), and county home rule ordinances, in the unincorporated area of the county. Appellants in that case questioned the constitutionality of Sections 125.011(1)(q) and 125.01(1)(r), Florida Statutes (1975), and contended that the levy of ad valorem taxes for the purposes of raising tax revenues to be devoted to solid waste disposal, and its interrelated but optional reduction of user charges imposed to meet debt service and operating costs under the prior bond issue, constituted an impermissible financing scheme to meet solid waste disposal needs. This Court disagreed with the contentions of the appellants and held that the previous sections of Chapter 125 were constitutional and that such a financing scheme was entirely appropriate, thereby affirming the final judgment of the lower court.
Appellants also contend that there is no provision in Chapter 125, Florida Statutes (1975), authorizing the Board of County Commissioners to submit the question of the issuance of the proposed general obligation bonds to the electorate, therefore, the holding of the election was unauthorized and invalid. Article VII, Section 12(a), Florida Constitution (1968), however, requires any indebtedness of a local government body with taxing powers which is payable from ad valorem taxation, matures more than twelve months after issuance *212 and is to be issued to finance capital projects authorized by law, to be approved by the vote of the qualified electors of that body. This provision reads as follows:
"Section 12. Local bonds. Counties, school districts, municipalities, special districts and local government bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: "(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; ..."
This provision of the Florida Constitution is implemented by Section 5 of the ordinance which requires that the issuance of bonds for which the full faith and credit of the Unit shall have been pledged as additional security, shall be approved at an election of the qualified electors residing in the Unit, such election to be called, noticed and conducted in the manner provided in the Florida Constitution and statutes for elections. Since the bonds proposed to be issued by the county pledge both net revenues to be derived from the operation of the combined water and sewer system and ad valorem taxes to be levied and collected in the area of the Unit, it was necessary to hold a bond election as part of the authorization for their issuance.
The provisions of Chapter 153, Florida Statutes (1975), have not been sought by Pasco County as authority for the issuance of the proposed bonds. Use of this statute is not mandatory, but is only an additional grant of authority or power to do the things expressed therein. Section 153.20, Florida Statutes (1975), provides insight into the intent of the Legislature in enacting Chapter 153:
"153.20 Alternative method. 
"(1) This chapter shall be deemed to provide an additional and alternative method for the doing of the things authorized hereby and shall be regarded as supplemental and additional to the powers conferred upon the commission by other laws, and shall not be regarded as in derogation of any powers now existing. This chapter being necessary for the welfare of the inhabitants of the several counties of the state shall be liberally construed to effect the purposes thereof.
"(2) This chapter shall not repeal any local or specific act or law conferring upon any of the several counties or county commissions the powers and duties or any of them imposed hereby, but it shall be deemed to be an alternative or additional method for such counties or county commissions to effect the purposes of this chapter."
This language, or language similar to it in other general laws, has been construed by this Court on many occasions and always for the purpose for which the Legislature intended it; not as a limitation or prohibition of a power but as an added grant of authority or power to do a particular thing or perform a particular act the power or authority for which was not contained in, or in fact was in conflict with the authority of, any other law, and then only when the public entity was invoking such additional and supplemental power and availing itself of its use.
In the case of State v. City of West Panama City Beach, 127 So.2d 665 (Fla. 1961), the City of West Panama City Beach authorized the issuance of its water revenue bonds pursuant to Chapter 180, Florida Statutes, payable from cigarette taxes and utilities services taxes. Chapter 180, however, did not specifically authorize the pledging of this security for the bonds; therefore, the city sought to rely upon a provision in Chapter 180 similar to that previously quoted in order to secure the benefits and powers granted in other general law. The provision relied upon read as follows:
"The authority and powers granted by this chapter to municipalities shall be in addition to but not in limitation of any of the powers heretofore or hereafter granted to municipalities now existing or hereafter created."
*213 The Court held that the provision was cumulative and not in derogation of any other powers enjoyed by the city, and it is clear that the city actively sought the protection and comfort of the provision and did not feel it was limited to the provisions of Chapter 180 in accomplishing its purpose. See also, City of North Miami Beach v. Knap, 131 So.2d 747 (Fla. 3d DCA 1961); State v. City of Fort Pierce, 88 So.2d 135 (Fla. 1956); State v. City of North Miami, 89 So.2d 8 (Fla. 1956).
So, therefore, this Court has not only stated that an act, when it recites that it is an additional and supplemental grant of power, may be used in addition to other laws on the same subject, but may be rejected by a public entity and another applicable law used in its place. So it is in this case. Pasco County has elected to proceed solely under the provisions of Chapter 125, Florida Statutes (1975), as amended, and has rejected the use of any other statute. In so doing it has acted properly and within the scope of its authority as set forth by decisions of this Court.
The trial court was correct in holding that the action of the Appellee Board of County Commissioners in declaring an emergency and using the emergency enactment procedure contained in Section 125.66(3), Florida Statutes (Supp. 1976), for the enactment of the ordinance, should not be disturbed. The law in Florida with respect to declaration of an emergency first appeared in the case of State ex rel. Swift v. Dillon, 75 Fla. 785, 79 So. 29 (1918). In that case a Miami licensing ordinance was attacked on the ground that the emergency measure was not such as was authorized by the city charter and that the ordinance was, therefore, invalid. The court held that the ordinance was presumptively valid and that the question of whether or not such emergency exists as to warrant its being made immediately effective rests in the judgment and discretion of the city council. Dillon was cited with approval in Metropolis Pub. Co. v. City of Miami, 100 Fla. 784, 129 So. 913 (1930), in which a Miami zoning ordinance enacted under the charter emergency provisions was upheld. Both Dillon and Metropolis Pub. Co. were cited by the Court in State ex rel. Skillman v. City of Miami, 101 Fla. 585, 134 So. 541 (1931), which restated and reaffirmed the general law of Florida pertaining to emergency ordinances. See also, Fuller v. Gardner, 138 Fla. 837, 190 So. 442 (1939); McCall v. State ex rel. Daniels, 156 Fla. 437, 23 So.2d 492 (1945).
Although conflicting, there is evidence that prior to November 1, 1977, the date of enactment of the ordinance, there existed a very serious condition in regard to the water service being provided the citizens of west Pasco County. In response to the emergency which it perceived to exist, the Board of County Commissioners duly enacted the ordinance on November 1, 1977, pursuant to the emergency procedure contained in Section 125.66(3), Florida Statutes (Supp. 1976). The factual dispute as to the existence of the emergency was resolved by the trial court in favor of the Board of County Commissioners. We cannot conclude that the evidence before the trial court compelled a conclusion that the Board's declaration of an emergency amounted to a sham or fraud. Under such circumstances we will not disturb the ruling of the trial court. Fuller v. Gardner, 139 Fla. 837, 190 So. 442 (1939); City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1975).
Since time was of the essence, a successful bond election was held at which a 78% majority approved the issuance of the proposed bonds. Shortly thereafter the Appellee Board adopted a bond resolution using the procedure approved by this Court in State v. Orange County, supra.
There is competent, substantial evidence to sustain the trial court's decision as to the existence of an emergency on November 1, 1977. Therefore, it should not be disturbed. Furthermore, the trial judge was correct in holding that the proposed issue of bonds was fully authorized by law.
The final judgment of the trial court validating the proposed issue of bonds is affirmed.
*214 BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
ALDERMAN, J., concurs in result only.
ENGLAND, C.J., dissents.