Mr. David C. Brown Chairman Board of County Commissioners Collier County Collier County Courthouse Complex Naples, Florida 33962-4977
Dear Mr. Brown:
This is in response to your request for an Attorney General Opinion on the following questions:
 1. WITH REGARD TO OCCUPATIONAL LICENSES ISSUED FOR THE PRIVILEGE OF ENGAGING IN OR MANAGING ANY BUSINESS, PROFESSION OR OCCUPATION WITHIN THE UNINCORPORATED AREA OF AN UNCHARTERED COUNTY, IS THE COUNTY TAX COLLECTOR THE ONLY AUTHORITY WHO IS AUTHORIZED TO ISSUE SUCH LICENSES AND COLLECT THE TAXES THEREFOR, OR MAY THE BOARD OF COUNTY COMMISSIONERS DIRECT THAT SUCH RESPONSIBILITIES AND ACTIVITIES BE HANDLED BY A SEPARATE DEPARTMENT WHICH WILL ALSO ISSUE CONTRACTORS' CERTIFICATES OF COMPETENCY?
 2. IF YOUR OPINION IS THAT THE BOARD OF COUNTY COMMISSIONERS MAY DIRECT THAT OCCUPATIONAL LICENSES AND CONTRACTORS' CERTIFICATES OF COMPETENCY BE ISSUED BY A SEPARATE DEPARTMENT ORGANIZED FOR THAT SPECIFIC PURPOSE, MAY THE BOARD OF COUNTY COMMISSIONERS DESIGNATE THE CLERK OF CIRCUIT COURTS/CLERK TO THE BOARD TO COLLECT THE OCCUPATIONAL LICENSE AND CERTIFICATE OF COMPETENCY FEES?
To thoroughly address the issues contained in both your first and second question a distinction must be made between occupational licenses which are of a revenue producing nature and certificates of competency which represent a regulatory license. While Ch. 205, F.S., the "Local Occupational License Tax Act" is applicable, as discussed herein, to occupational licenses it does not address regulatory licenses such as contractors' certificates of competency. Section 205.022(1), F.S., defining the phrase "local occupational license", distinguishes between a local occupational license and a regulatory permit or registration such as a certificate of competency:
 "Local occupational license" means the method by which a local governing authority grants the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction. It shall not mean any fees or licenses paid to any board, commission, or officer for permits, registration, examination, or inspection. Unless otherwise provided by law, these are deemed to be regulatory and in addition to, and not in lieu of, any local occupational license imposed under the provisions of this chapter. (e.s.)
Cf., s 489.117(1), F.S., which states that to be initially registered with the Department of Professional Regulation an applicant engaged in the business of contracting shall submit, among other things, evidence of successful compliance with any local examination and licensing requirements in the area for which registration is desired; s 489.131(3)(c), F.S., stating, inter alia, that nothing in Ch. 489, F.S., limits the power of counties to collect examination fees pursuant to local contracting examination requirements; s 489.131(6), F.S., which provides that counties may continue to provide contracting examinations for their territorial areas; s 489.131(7), F.S., preserving to counties the right to create local boards; and s 489.131(8), F.S., which states that no provision of Ch. 489, F.S., shall be construed to permit a contractor to perform certain types of work for which an examination for a certificate of competency or a license is required, unless the contractor holds such certificate of competency or license as may be required by the appropriate local authority (and that if the local authority does not require such a certificate or license then the provisions of subsection [8] do not apply). Authorization for the issuance of such certificates of competence which constitute local regulatory legislation would be contained in a special act or county ordinance designating what department or county agency would be responsible for issuing such certificates. And see, s125.01(1)(h), F.S., authorizing counties to establish, coordinate and enforce such business regulations as are necessary for the protection of the public. In sum, the authority to issue contractor's certificates of competency and the designation of the county department or agency responsible for issuing such certificates would be contained in a special law or county ordinance rather than being governed by the provisions of Ch. 205, F.S., which address occupational license taxes which are distinct and apart from fees for contractors' certificates of competency in both their nature and purpose.
QUESTION ONE
The Legislature possesses the inherent power to impose taxes upon professions, trades, occupations, businesses and privileges and this power is limited only by restrictions contained in the State or Federal Constitution. See generally, 51 Am.Jur.2d Licenses and Permits s 4; see also, Amos v. Mathews, 126 So. 308, 315
(Fla. 1930). Thus, as a general rule, the power to levy excise, occupational or other taxes which are in the nature of license or privilege taxes may be exercised on any business, profession or occupation. See, 53 C.J.S. Licenses ss 4 and 6(a)(2); Amos v. Gunn, 94 So. 615, 640 (Fla. 1922). However, a county, like other units of local government, has no inherent power to impose taxes; the taxing power for units of local government must be derived from the state. Cf., Contractors and Builders Association of Pinellas County v. City of Dunedin, 329 So.2d 314, 317 (Fla. 1976), pet. for cert. den., 444 U.S. 867 (1979); Belcher Oil Company v. Dade County, 271 So.2d 118, 122 (Fla. 1972). See generally, 53 C.J.S. Licenses s 9.
Section 1(a), Art. VII, State Const., provides in pertinent part that "[n]o tax shall be levied except in pursuance of law. . . . All other forms of taxation shall be preempted to the state except as provided by general law." Section 9 of this same Article provides that counties shall be authorized to levy ad valorem taxes and may be authorized by general law to levy other taxes for their purpose with certain exceptions.
Section 205.032, F.S., authorizes the governing body of a county to levy "an occupational license tax for the privilege of engaging in or managing any business, profession or occupation within its jurisdiction." Certain notice requirements are also set forth in this section which are applicable to any proposed resolution or ordinance to levy such tax. See also, s 205.033, F.S., which imposes certain conditions on the authority of a county governing body to levy an occupational license tax.
While the legislative and governing body of a county has been granted rather broad home rule powers by s 1(f), Art. VIII, State Const., as implemented by s 125.01, F.S., and as construed by the Florida Supreme Court in Speer v. Olson, 367 So.2d 207, 211
(Fla. 1978), I do not perceive that the governing body of a noncharter county derives any home rule power from s 1(f) of Art. VIII, State Const., and s 125.01, F.S., to regulate the issuance or sale of occupational licenses or the collection of such taxes. Rather, the levying and collection of occupational license taxes (or the issuance or sale of occupational licenses and the collection of license taxes) are matters which are the exclusive prerogative of the Legislature pursuant to ss 1(a) and 9(a), State Const., as implemented by Ch. 205, F.S. Moreover, the power and the duty of a county officer to issue or sell occupational licenses and to collect occupational license taxes must be "fixed by law" (e.s.) and may not be authorized or vested in or imposed upon any county officer by county ordinance. See, s 5(c), Art. II, State Const. In the instant case, the county is proposing by ordinance to authorize another "separate department" of county government or county official to perform such functions and to place such responsibilities upon another agency or officer of county government. As hereinbefore noted, the board of county commissioners possesses no power of self government to regulate the imposition and collection of occupational license taxes or to authorize or require any other agency or officer of county government to issue or sell occupational licenses and collect occupational license taxes. Such licenses must be sold and such taxes collected by the county tax collector as directed by the Legislature in Ch. 205, F.S. Assuming arguendo that the county commission possessed such home rule power, the proposed county ordinance would conflict with s 205.053(1), F.S., which requires the "appropriate tax collector" to sell "all licenses" (e.s.), and possibly with s 205.043(4), F.S., which authorizes "the collector of the county tax" to issue municipal licenses and collect municipal taxes thereon in certain cases. With regard to the issuance or sale of occupational licenses, s 205.053(1), F.S., provides inter alia, that "[a]ll licenses shall be sold by the appropriate tax collector . . . ." (e.s.) Cf., s 205.043(4), F.S. No alternative method or procedure for the issuance or sale of occupational licenses is contemplated by this section. It is the rule that when the controlling law directs how a thing shall be done, that is, in effect, a prohibition against its being done in any other way. See, Alsop v. Pierce, 19 So.2d 799, 806 (Fla. 1944); cf., White v. Crandon, 156 So. 303 (Fla. 1934). Section 205.053(1), F.S., appears to represent the governing general law on this subject and a county has no authority to establish by ordinance any system for the issuance or sale of licenses which is in conflict therewith. See, s 125.01(1), F.S.; cf., Speer v. Olson,367 So.2d 207 (Fla. 1979); City of Miami Beach v. Rocio Corporation, 404 So.2d 1066 (3 D.C.A. Fla., 1981), pet. for rev. den., 408 So.2d 1092 (Fla. 1981); Campbell v. Monroe County,426 So.2d 1158 (3 D.C.A. Fla., 1983).
Further, pursuant to s 192.091(2), F.S., the county tax collector is entitled to receive "upon the amount on all . . . licenses collected and remitted" such commissions as are prescribed by the statute. On county taxes, including licenses, the county tax collector is entitled to receive a commission of: ten percent on the first $5,000; five percent on the next $5,000; three percent on the balance up to the amount of taxes collected and remitted on an assessed valuation of $50 million; and two percent on the balance. Section 192.091(2)(b)1.-4., F.S. And see, s 5(c), Art. II, State Const., which provides that the compensation and method of payment of county officers shall be fixed by law. In light of these statutory and constitutional provisions any attempt by the county to deprive the county tax collector of such compensation or commissions by enacting an ordinance establishing a contrary system for the issuance or sale of licenses would be in conflict with the statutory provisions cited herein and, therefor, unauthorized. See, Speer v. Olson, supra; City of Miami Beach v. Rocio Corporation, supra.
QUESTION TWO
No response to your second question is required based on the answer to Question One.
Therefore, it is my opinion that the issuance or sale of occupational licenses and the collection of license taxes are the exclusive prerogative of the Legislature pursuant to ss 1(a) and 9(a), State Const., as implemented by Ch. 205, F.S., and the governing body of a noncharter county derives no home rule power from s 1(f), Art. VIII, State Const., and s 125.01, F.S., to regulate the issuance or sale of occupational licenses and the collection of license taxes. Further, it is my opinion that, as Ch. 205, F.S., sets forth the exclusive procedure for the issuance or sale of occupational licenses and the collection of occupational license taxes, a county may not establish any method of selling such licenses or collecting such taxes which is in conflict therewith, see, s 125.01(1), F.S.; Speer v. Olson, supra; City of Miami Beach v. Rocio Corporation, supra, and that, pursuant to s 205.053(1), F.S., the county tax collector is the "appropriate tax collector" to sell county occupational licenses.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General