Mr. Ronald A. Mowrey County Attorney Wakulla County 1114 North Adams Street Tallahassee, Florida 32303
Dear Mr. Mowrey:
This is in response to your request for an opinion on substantially the following question:
 MAY THE BOARD OF COUNTY COMMISSIONERS OF WAKULLA COUNTY EXPEND COUNTY FUNDS TO KEEP OPEN TO THE PUBLIC UNPAVED ROADS LOCATED ON PRIVATE PROPERTY WHICH HAVE NOT BEEN DEDICATED TO OR MAINTAINED BY THE COUNTY BUT WHICH HAVE BEEN SUBJECT TO A PRESCRIPTIVE EASEMENT FOR THE PAST TWENTY YEARS?
You state that although the roads in question are located on private property, they have been used in the past by the general public for purposes of limited motor vehicle transportation. The roads have not been dedicated to the county nor has the county constructed or maintained these roads at any time nor is there any other evidence of any affirmative act of acceptance, dominion or other control over such roads by the county. You state, however, that "[u]se of the roads [by the public] has almost certainly given rise to a prescriptive easement during the past twenty (20) years."
Any question as to whether the county and the public have acquired an easement by prescription is a mixed question of law and fact which this office is without the authority to determine; rather such a question would have to be resolved in an appropriate legal proceeding by clear and positive evidence. See, e.g., Baya v. Central and Southern Florida Flood Control District, 166 So.2d 846
(2 D.C.A.Fla., 1964) (proof to establish prescriptive easement to road must be clear and any doubt is to be resolved in favor of owner of land); Genet v. City of Hollywood, 400 So.2d 787 (4 D.C.A.Fla., 1981), pet. for rev. den., 411 So.2d 381 (Fla. 1981); Quail Hollow Farms, Inc. v. Young, 426 So.2d 1143 (1 D.C.A.Fla., 1983). It is generally recognized, however, that a legally organized or political entity may acquire an easement by prescription and that a political entity such as a county may represent the public in the establishment of such an easement. See, 2 Fla.Jur.2d Adverse Possession s 54; 25 Am.Jur.2d Easements and Licenses s 40; and 3 Am.Jur.2d Adverse Possession s 139 (acquisition of title by adverse possession by public would have to be through a public or governmental entity rather than unorganized public; clearly, title may be acquired by the United States, a state, county, city or other governmental entity). And see, Gideon v. Tuscbay Properties, Inc., 314 F.2d 445 (5th Cir. 1963) (Florida recognizes easements by prescription in favor of the public as well as in favor of private individuals); Couture v. Dade County, 112 So. 75 (Fla. 1927).
In order to establish an easement by prescription in a roadway, it is necessary to prove: 1) the public had continued and uninterrupted use or enjoyment of the lands of another as a roadway for at least 20 years; 2) the identity of the roadway, i.e., its route, termini and width; and 3) the public's use or enjoyment was adverse or under a claim of right. See, s 2 Fla.Jur.2d Adverse Possession s 54; Berger v. City of Coral Gables, 101 So.2d 396 (3 D.C.A.Fla., 1958) (when land used as a highway by general public for period of 20 years, public acquires an easement to same by prescription and dedication of land for such use is unnecessary); Baya v. Central and Southern Florida Flood Control District, supra; Lake County v. Gatch, 168 So.2d 81
(2 D.C.A.Fla., 1964), cert. denied, 174 So.2d 30 (Fla. 1965). And see, Couture v. Dade County, supra (it is adverse use and possession which establishes a highway; if roadway is a public highway, any willful obstruction thereof by person with intention of preventing its use by public is without authority of law whether he has knowledge of the means by which it became a public highway or not). But see, Pinellas County v. Roach, 36 So.2d 364
(Fla. 1948), wherein the court denied the county's request for an injunction to reopen a road where the alleged possession of the road was based solely on the long continued use by the public when it was shown that the use was permissive, not adverse, that the owner had no reason to be aware of the claim of the public to use the road, and that the county had never taken official cognizance thereof). See also, 2 Fla.Jur.2d Adverse Possession s 58 stating that in order to establish a prescriptive easement to a roadway, there must be proof of actual, continuous, uninterrupted use for a prescribed period (20 years) which is adverse under a claim of right and must either be with the knowledge of the owner or by a use so open, notorious, visible and uninterrupted that knowledge of the use by the adverse claimant is imputed to the owner; in addition, the use must be inconsistent with the owner's use and enjoyment and must not be permissive; and Gibson v. Buice,394 So.2d 451 (5 D.C.A.Fla., 1981); Gay Brothers Construction Co. v. Florida Power Light Co., 427 So.2d 318 (5 D.C.A.Fla., 1983); Crigger v. Florida Power Corp., 436 So.2d 937 (5 D.C.A.Fla., 1983).
Assuming for purposes of this inquiry that it is established in law and fact that the public has acquired a prescriptive easement in the roads in question (a determination which this office cannot make), you inquire as to whether county funds may be expended to prevent the closing of such roads. Section 1(f), Art. VIII, State Const., provides in pertinent part that noncharter counties "shall have such power of self-government as is provided by general or special law." Implementing this constitutional provision, s125.01(1), F.S., states that "[t]he legislative and governing body of a county shall have the power to carry on county government." The Florida Supreme Court in Speer v. Olson, 367 So.2d 207, 211
(Fla. 1978), has held that this provision of s 125.01(1) grants to the governing body of a county the full power to carry on county government and that unless the Legislature has preempted a particular subject relating to county government by either general or special law, the governing body of the county, by reason of this first sentence of s 125.01, has full authority to act through the exercise of its home rule powers. And see, s 125.01(1)(w), F.S. (county commission may perform any other acts not inconsistent with law which are in the common interest of the people of the county and exercise all powers and privileges not specifically prohibited by law); and s 125.01(3)(b), F.S. (provisions of section shall be liberally construed in order to effectively carry out purposes of section and secure for counties the broad exercise of home rule powers authorized by State Constitution). Thus it appears that a noncharter county exercising its home rule powers as provided in s 1(f), Art. VIII, State Const., and s 125.01, F.S., as construed by the Florida Supreme Court in Speer v. Olson, supra, may exercise such powers as it deems necessary to carry on county government provided that the exercise of such powers has not been preempted to the state and does not conflict with state law or certain constitutional inhibitions.
In addition, s 125.01(1)(b), F.S., expressly authorizes the board of county commissioners to provide for the prosecution and defense of legal causes in behalf of the county. Moreover, s 125.01(1)(m), F.S., specifically provides for the board of county commissioners in the exercise of its home rule powers to provide for and regulate roads. See, s 334.03(7), F.S., defining "road" for purposes of the Florida Transportation Code, Chs. 334-339 and 341, F.S., to include streets, sidewalks, highways and other ways open to travel by the public, including, among other things, the roadbed and right-of-way; and s 334.03(9), F.S., defining "right-of-way" as land in which the state, the department, a county or a municipality owns the fee or has an easement devoted to or required for use as a public road. Public roads include those roads open to travel by the public generally and dedicated to the public use, according to law or by prescription, as well as those roads constructed out of public funds and dedicated to general public usage, and all extensions and connections thereto. Section 335.01(1), F.S. See generally, s 335.01(2), F.S., dividing public roads into four systems, including the county road system; cf., ss 334.03(23) and 336.01, F.S., defining the county road system. And see, s 336.02, F.S., providing that the county commission is invested with the general superintendence and control of county roads and structures within its jurisdiction and may establish new roads, change and discontinue old roads and keep the same in good repair in the manner provided therein; s 335.04(4), F.S. See also, s 336.09(1), F.S., stating that the county commission may close or abandon roads, specifically s336.09(1)(b) providing that the county commission may "[r]enounce and disclaim any right of the county and the public in and to any land, or interest therein, acquired by purchase, gift, devise, dedication or prescription for street, alleyway, road or highway purposes, other than lands acquired for state and federal highway . . . ." (e.s.)
Thus noncharter counties have been granted home rule powers to carry on county government and have been specifically authorized to establish, open, maintain, regulate or close public roads. In addition, the board of county commissioners possesses the authority to prosecute and defend legal causes on behalf of the county. It therefore appears that it is within the legislative discretion of the board of county commissioners in exercising its home rule powers to expend public funds to prevent the closing of public roads by a landowner. The legislative determination, however, as to whether a particular road is a public road which should be maintained, regulated or kept open or to expend county funds therefor is a decision which must be made by the board of county commissioners as the legislative and governing body of the county. Such a function may not be delegated to or exercised by this office. See, e.g., AGO 83-5 wherein this office concluded that under proper circumstances and based upon appropriate legislative findings and pursuant to the exercise of the county's home rule powers, it was a matter of legislative judgment of the county commission whether to expend county funds in order to institute an incentive program whereby plaques and incentive awards were to be bestowed upon certain county employees in recognition of superior job-related achievements and to pay for retirement dinners or for coffee and refreshments for visitors. The opinion, however, made it clear that the county commission should make appropriate legislative findings as to the purpose of the ordinance providing for such an incentive program and the benefits which would accrue to the county from such a program; such legislative functions and determinations could not be delegated to the Attorney General nor could the Attorney General undertake to make such legislative findings and determinations on behalf of the county. Accord, AGO 84-49 (expenditures for incentive awards in safety program is a matter within the legislative discretion of county commission in the exercise of its home rule powers and board of county commissioners, not *2772 Attorney General, must determine the need for proposed program and benefits thereof to and in the common interests of the people of the county). Cf., AGO 81-18 relating to the expenditure of county funds to post and maintain traffic control devices on roads not part of the county road system but on which the public has the right to travel; AGO 84-46 (enforcement of traffic laws on roads open to public).
Thus the board of county commissioners must determine the need for such roads to remain open and whether the benefits thereof are to and in the common interest of the people of the county. In the first instance, however, the county commission must determine that a prescriptive easement has been established on the roads in question by the public's use of such roads over a sufficient period of time and thus whether the public has acquired a right to travel on such roads. The existence of any such easement would ultimately have to be established or proved by clear and convincing evidence in an appropriate legal proceeding. Any legislative determination, however, as to county purpose and the expenditure of county funds should be made by the county commission by proper ordinance or resolution with the proper legislative determinations as to the purpose of the ordinance or resolution and the benefits thereof to the county.
Accordingly, I am of the opinion that the Board of County Commissioners of Wakulla County may in the exercise of its home rule powers, by proper ordinance or resolution making the appropriate legislative determinations as to the purpose of the ordinance or resolution and the benefits to the county, determine that it is of benefit to and in the common interest of the people of the county that certain roads located in the county on which the public has acquired the right to travel by prescriptive easement be kept open and may expend county funds for such legislatively declared purpose. The determination as to whether the county and public have acquired an easement in a particular road, however, is a mixed question of law and fact which this office cannot resolve.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joslyn Wilson Assistant Attorney General