To: William E. Curphey County Attorney Brevard County
QUESTION:
May Brevard County expend county funds to publicly advertise its position on an issue to be voted on in an upcoming referendum?
SUMMARY:
Unless restricted by, and to the extent consistent with general or special law, the Brevard County Commission may expend public funds to publicly advertise its position in an upcoming referendum, provided that prior to making such an expenditure, the county commission, as the legislative and governing body of the county, determines by ordinance expressing appropriate legislative findings as to the purpose of the expenditure and the benefits accruing to the county therefrom, that such expenditures will serve a county purpose.
According to your letter, Brevard County will be introducing a referendum on the tourist development tax. See s. 125.0104, F.S., as amended by s. 1, ch. 86-4, Laws of Florida, and s. 76, ch. 86-163, Laws of Florida, the Local Option Tourist Development Act. See also AGO's 79-30, 83-18 and 86-68. The county commissioners wish to utilize county funds to advertise their support of passage of the tax.
Although the question of whether public funds may be expended to support or to oppose an issue before the electorate has not been extensively litigated in this state, courts in other jurisdictions have questioned the validity of such expenditures in the absence of specific legislative authorization. See, e.g., Citizens to Protect Public Funds v. Board of Education, 98 A.2d 673, 677
(N.J. 1953), wherein the Court declared that public funds belong equally to the proponents and opponents of a proposition and that the use of such funds to advocate only one side of a controversial question without affording the dissenters the opportunity by means of that financed medium to present their side imperiled the propriety of the entire expenditure. See also AGO 77-8 (and cases cited therein) which stated that the conclusion that pursuant to Florida law public funds may not be expended by a statutory entity for lobbying purposes unless expressly and specifically authorized by statute was consistent with the weight of authority throughout the country. Cf. AGO 84-17 which examined the issue of whether the Legislature could expend public funds in support of or in opposition to the adoption of a constitutional amendment. But see AGO 74-113 in which this office recognized the home rule powers of municipalities and concluded that the governing body of the municipality as the legislative body of that governmental unit could expend municipal funds to purchase newspaper advertisements supporting or opposing the repeal of a county utilities tax which it determined affects and involves the interests of the municipality and its citizens. Accord AGO's 74-227 (municipal funds may be used to support or oppose the question of annexation as it is a matter that affects and involves interests of municipality and its citizens); 78-41 (municipality may expend funds to support a bond issue).
Section 1(f), Art. VIII, State Const., provides in part that "[c]ounties not operating under county charters shall have such power of self-government as is provided by general or special law." (Emphasis supplied.) The foregoing constitutional provision is implemented in s. 125.01(1), F.S., which states that "[t]he legislative and governing body of a county shall have the power to carry on county government." And see ss. 125.01(1)(r) (county commission may levy and collect taxes for county purposes);125.01(1)(w) (county commission may perform any other acts not inconsistent with law which are in the common interest of the people of the county and exercise all powers and privileges not specifically prohibited by law); 125.01(3)(a) (enumeration of powers not exclusive or restrictive, but are deemed to incorporate all implied powers necessary or incident to carrying out enumerated powers); 125.01(3)(b), F.S. (provisions of section shall be liberally construed in order to effectively carry out purposes of section and secure for counties the broad exercise of home rule powers authorized by State Constitution).
In Speer v. Olson, 367 So.2d 207, 211 (Fla. 1978), the Florida Supreme Court construed s. 125.01(1), F.S., supra, and held that the first sentence thereof grants to the governing body of a county the full power to carry on county government. Moreover, the Court held that unless the Legislature has preempted a particular subject concerning county government by either general or special law, the county governing body, by reason of the first sentence of s. 125.01(1), supra, has full authority to act through the exercise of home rule power. Cf. State v. Orange County,281 So.2d 310 (Fla. 1973), in which the Court noted that the intent of the Legislature in enacting ch. 125 was to obviate the necessity of going to the Legislature to get a special act passed authorizing the issuance of certain types of bonds, stating that the county commission under the authority of the 1968 Constitution and enabling statutes was authorized to pass an ordinance for such purpose because there was nothing inconsistent in general or special law. Thus, it appears that a noncharter county exercising its home rule powers pursuant to s. 1(f), Art. VIII, State Const., supra, and s. 125.01, supra, as construed by the Florida Supreme Court in Speer v. Olson, supra, may exercise such powers as it deems necessary to carry on county government provided that the exercise of such powers has not been preempted to the state and does not conflict with state law or the Florida Constitution. See also AGO's 84-76 and 81-48.
It is also axiomatic that public funds may only be spent for a public purpose or function which is expressly authorized by law or which must be necessarily implied to carry out the purpose or function expressly authorized. See s. 10, Art. VII, State Const. See, e.g., Davis v. Keen, 192 So. 200 (Fla. 1939); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); AGO's 86-44, 83-6 and 72-198. Therefore, county funds may be utilized only for a county purpose and only when properly budgeted for such a use. The purpose of s. 10, Art. VII, State Const. (which prohibits the state, a county, municipality, school district, special district, or any agency thereof from lending or using its taxing power or credit to aid any corporation, association, partnerships or person) is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefited. See, e.g., Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971); O'Neill v. Burns, 198 So.2d 1 (Fla. 1967); and see AGO 77-27 which emphasized that the presence of a public purpose is ultimately a factual determination for the Legislature (in this case the legislative and governing body of the county) or the courts, but that initially there must be both some clearly identified and concrete public purpose as a primary objective, and a reasonable expectation that the purpose will be accomplished.
Further in Burton v. Dade County, 166 So.2d 445, 447 (Fla. 1964) the Court declared that "the wisdom or advisability of making [an] expenditure [of county funds] in any particular instance, is the responsibility of the governing authorities of the county." Thus, in AGO 83-5, this office concluded that under proper circumstances and based upon appropriate legislative findings and pursuant to the exercise of the county's home rule powers, it was a matter of legislative judgment of the county commission whether to expend county funds in order to institute an incentive program whereby plaques and incentive awards were to be bestowed upon certain county employees in recognition of superior job-related achievements and to pay for retirement dinners or for coffee and refreshments for visitors. That opinion also made it clear that it is the county commission which must make the appropriate legislative findings as to the purpose of the ordinance providing for such an incentive program and the benefits which would accrue to the county from such a program; such legislative functions and determinations could not be delegated to the Attorney General nor could the Attorney General undertake to make such legislative findings and determinations on behalf of the county. Cf. AGO's 84-49, 84-76 and 84-101.
I am not aware of any general or special law which specifically authorizes or restricts a noncharter county to make an expenditure of the type under consideration nor has any such statutory provision been brought to the attention of this office. Therefore, in light of the holding of Speer v. Olson, supra, and the provisions of s. 1(f), Art. VIII, State Const., and s. 125.01, F.S., authorizing noncharter counties to exercise such powers as they deem necessary to carry on county government, provided that the exercise of such powers has not been preempted to the state and does not conflict with state law or the Constitution, it appears that Brevard County may expend public funds to publicly advertise its position in a referendum, provided that prior to making such an expenditure, the Brevard County Commission makes appropriate legislative findings as to the purpose of the expenditure and the benefits which would accrue to the county therefrom. See AGO 83-5, supra.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General