Mr. Randy Ludacer County Attorney Monroe County 310 Fleming Street, Room 29 Key West, Florida 33040
Dear Mr. Ludacer:
You ask substantially the following question:
 May a noncharter county expend county funds for lobbying purposes?
In sum, I am of the opinion that:
 Upon making the appropriate findings that an expenditure of county funds for lobbying serves a county purpose and is in the public interest, the board of county commissioners may expend county funds for lobbying.
You inquire whether a noncharter county possesses the necessary authority to expend county funds to employ persons as lobbyists in light of the decision of The Supreme Court of Florida in Speer v. Olson, 367 So.2d 207 (Fla. 1978).
In Speer, the Supreme Court concluded that the first sentence of s. 125.01(1), F.S.,[1] grants to the board of county commissioners, as the governing body of a county, the full power to carry on county government:
 Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power.[2]
Thus, a noncharter county may exercise any such powers as it deems necessary to carry on county government provided that the exercise of those powers has not been preempted to the state and does not conflict with state law or the Florida Constitution.[3] The expenditure of any public funds, however, must be for a public purpose.[4] County funds, therefore, may be used only for a county purpose and only when properly budgeted for such a use.[5]
I am not aware of any statutory provision expressly authorizing or prohibiting the use of county funds for the purpose of lobbying.[6]
This office has previously stated that a county commission may expend public funds to publicly advertise its position in a referendum provided that it first has made appropriate legislative findings as to the purpose of the expenditure and the benefits which would accrue to the county.[7]
Similarly, it would appear that in light of home rule powers granted to counties by the Constitution and statutes, the board of county commissioners may expend county funds for lobbying provided that it first makes appropriate legislative findings as to the purpose of the expenditure and the benefits which would accrue to the county.[8] The determination of what is in the county's interest and serves a county purpose, however, is one which the county commission, as the legislative body of the county, and not this office, must make.[9]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] The first sentence of s. 125.01(1), F.S., provides that "[t]he legislative and governing body of a county shall have the power to carry on county government."
[2] 367 So.2d at 211.
[3] See, AGO's 84-76 and 81-48 recognizing the home rule powers of noncharter counties.
[4] See, s. 10, Art. VII, State Const., which prohibits the state, county, municipality, school district, special district, or any agency thereof, from lending or using its taxing power or credit to aid any private corporation, association or partnership or person. The purpose of this constitutional provision is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would at most be incidentally benefitted. See, e.g., Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971).
[5] See, AGO's 86-87 and 86-44. And see, Burton v. Dade County,166 So.2d 445, 447 (Fla. 1964) (county funds, generally, may be used to accomplish any legitimate county purpose).
[6] Compare, s. 11.062, F.S., providing that no funds, exclusive of salaries, travel expenses, and per diem, available for use by any executive, judicial, or quasi-judicial department shall be used by any state employee or other person for lobbying purposes.
[7] Attorney General Opinion 86-87. And see, AGO 74-227 concluding that municipal funds may be used to support position on annexation.
[8] Compare, AGO 85-4 concluding that a community college district which did not possess home rule powers was not authorized by statute to expend funds for lobbying activities and, in the absence of such statutory authorization, the community college district did not possess the necessary authority to expend funds for such a purpose.
[9] See, AGO's 86-87, 84-101, 84-76, and 84-49, stating that such legislative determinations could not be delegated to the Attorney General, nor could the Attorney General undertake to make such legislative findings and determinations on behalf of a public agency.