The Honorable Ed Collins Chairman, Pasco County Board of County Commissioners 7530 Little Road New Port Richey, Florida 34654
Dear Chairman Collins:
You ask substantially the following question:
May Pasco County, as the provider of ambulance services, waive or write off the amount of its fee for such services in excess of the amount reimbursed by Medicare or Medicaid and copayments made by the patient?
In sum:
Pasco County may waive or write off the amount of its fee for ambulance services in excess of the reimbursement by Medicare or Medicaid or copayments made by patients, since the reimbursement and copayment amounts represent full payment for such service rendered to the recipients.
You state that Pasco County provides ambulance services at a set fee for particular services. As indicated in your letter, Medicare reimburses the county at a rate of 80 percent of an approved charge, with the patient paying 20 percent of the approved charge as a copayment along with any unmet portion of the patient's deductible. Generally, under Medicaid, the provider bills a set amount and is reimbursed a flat fee representing payment in full. Section 409.907(3)(j), Florida Statutes, requires a provider to accept the Medicaid reimbursement as payment in full and prohibits the billing or collecting of an additional amount from the recipient, except to the extent the Agency for Health Care Administration permits or requires a copayment, coinsurance or deductible to be paid by the recipient.[1]
You indicate that under the current reimbursement system there is a deficiency between the amount charged by the county for providing ambulance service and the amount reimbursed for such service. In Attorney General Opinion 79-64 this office concluded that Pasco County did not possess the authority to waive the fee established and charged by it for county-operated ambulance services. The conclusion in the opinion was based upon a finding that the waiver of fees was a substantive power that had not been statutorily extended to the county. The opinion stated, however, that the county could compromise and settle a debt owed to it for such services, if a diligent effort was made to collect the debt and, if the debt was undisputed, the county received some benefit to which it was not otherwise entitled.
In light of the apparent conflict between section 409.907(3)(j), Florida Statutes, restricting the collection of deficiencies from the patient, and the conclusion in Attorney General Opinion 79-64, precluding the county from waiving the uncollected amounts, the question remains as to how Pasco County may proceed in handling reimbursement for the ambulance service it provides.
At the time Attorney General Opinion 79-64 was issued, the extent of a noncharter county's home rule authority in the absence of express statutory authorization was not well settled by opinions of this office. While the 1978 decision of the Supreme Court of Florida in Speer v. Olson[2] confirmed noncharter counties' authority to fully exercise their home rule powers to conduct county government unless a particular subject has been preempted by general or special law, it was not until 1981 that this office first acknowledged the implication of the Speer decision on noncharter counties.[3] After 1981, however, the possession of home rule powers by noncharter counties was clearly recognized by this office.[4]
Thus, to the extent the conclusion reached in Attorney General Opinion 79-64 is contrary to the Speer decision, it is hereby superseded and modified.
It would appear, therefore, that the ability of a noncharter county to exercise its home rule powers in providing ambulance services and charging fees for or collecting or waiving such fees would be limited only to the extent the state has preempted the subject or directed that it be accomplished in a specified manner.[5]
As noted above, section 409.907(3)(j), Florida Statutes, requires the county, as a provider of ambulance services to a Medicaid recipient, to accept Medicaid reimbursement as payment in full for such services. While there is no analogous statute directing reimbursement for Medicare payments, section 381.026(4)(c)2., Florida Statutes, requires a health care provider or health care facility, upon request, to disclose to each patient who is eligible for Medicare whether the provider or facility accepts assignment under Medicare reimbursement as payment in full for medical services and treatment rendered.[6] Counties are not included in the definitions of "health care facility" and "health care provider" contained in section 381.026, Florida Statutes.[7]
As you have indicated, however, the system in place for Medicare reimbursement to providers involves an approved fee schedule with Medicare paying 80 percent of the fee and the remaining 20 percent recoverable from the beneficiary as a copayment.
You have not directed my attention to any statutory provision that prescribes how Medicare reimbursements to providers of ambulance services are to be made or any limitations that may be imposed upon such providers on collecting fees or charges that are not reimbursed. As a practical matter, it would appear that the county would be unable to collect any fees beyond those reimbursed by Medicare and paid by the recipient as a copayment or any remaining deductible.[8]
Accordingly, it would appear to be within Pasco County's discretion under its home rule powers to waive or write off the amount of its fee for ambulance services in excess of the reimbursement by Medicare or Medicaid and copayments made by recipients of the service, since the reimbursement and copayment amounts represent full payment for such service rendered to beneficiaries.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, 409.9081(2), Fla. Stat. (1995), stating that the Agency for Health Care Administration shall, subject to federal regulations and subject to direction or limitations in the General Appropriations Act, require copayments for, among other things, transportation services.
[2] 367 So.2d 207 (Fla. 1978).
[3] See, Op. Att'y Gen. Fla. 81-48 (1981), reflecting this office's recognition of the Speer decision to conclude that a noncharter county could enact an ordinance providing for payments of sick leave to its employees, absent a special or general law restricting or prohibiting such action. The opinion specifically states that "[t]o the extent that previous opinions of this office are to the contrary, they are hereby superseded and modified." Cf., Ops. Att'y Gen. Fla. 79-64 and 79-84 (1979).
[4] See, Ops. Att'y Gen. Fla. 83-4 (1983), 84-6 (1984), 85-52 (1985), and 86-32 (1986).
[5] Cf., Op. Att'y Gen. Fla. 96-23 (1996) (county's home rule powers enabled it to agree to arbitration as part of a contract with a private entity, where prior to recognition of home rule powers county was dependent upon statutory grant of authority).
[6] But see, s. 455.2455, Fla. Stat. (1995), providing that a physician who treats a Medicare beneficiary for an emergency medical condition must accept Medicare assignment and that any attempt to collect any amount of charges for medical services in excess of those authorized, other than the unmet deductible and the 20 percent of charges that Medicare does not pay, is deemed void and of no merit.
[7] See, s. 381.026(2)(a) and (b), Fla. Stat. (1995).
[8] See, 42 U.S.C.S s. 1395l(a)(1), stating that 80 percent of the amount of the fee for Medicare services determined by the federal government will be reimbursed to the provider. And see, 42 U.S.C.S s. 1395u(b)(12)(C), recognizing a provider's entitlement to deductibles and coinsurance, but imposing civil penalties for billing or requesting payment in excess of amounts allowed under the law.