The Honorable Cheryl Strickland St. Johns County Clerk of Courts Post Office Drawer 300 Saint Augustine, Florida 32085
Dear Ms. Strickland:
You have asked for my opinion on substantially the following question:
Is St. Johns County authorized to use county funds to pay the cost of a traffic study that was commissioned by private citizens and presented by them to the county commission at a public meeting, if the study was utilized by the county commission in making its decision on improvements to a county road?
In sum:
A county, upon making the appropriate legislative finding that such an expenditure serves a county purpose, may pay for a traffic study that was commissioned by private citizens, presented to the county commission, and used by the county in determining whether to make improvements to a county road.
According to your letter, St. Johns County obtained traffic studies in connection with concurrency requirements for a public library including, as a component, transportation planning with a level of service analysis and identification of traffic improvement projects. Based on the original studies, design of a turn-lane project was undertaken by the county.
Shortly thereafter, based on concerns expressed by local citizens, county staff instructed a private traffic planning firm to conduct a new study of the need for the additional turn lane. At the same time and without consultation with the county, certain citizens independently contracted with a separate traffic planning firm for a traffic study of the same issue. The second county staff-ordered study and the citizens' report both recommended deletion of the proposed turn lane.
A public meeting was held before the Board of County Commissioners to present the county's new traffic study and the county staff's recommendation to delete the planned turn lane, and to hear the citizens' concerns. At that meeting, the county staff presented its new study and advised that the proposed turn lane was not necessary. The citizens group then made a presentation of their report to the county commission and requested the cancellation of the additional turn-lane project. A copy of the citizens' traffic study was filed with the commissioners and the clerk of the courts. The board then decided not to approve construction of the proposed additional traffic turn lane. During a subsequent county commission meeting, a majority of the members of the county commission stated that the citizens' report was influential in making their decision to vote against the construction of the turn lane.
The board has directed that you, as clerk of courts, pay for the cost of the report obtained by the citizens, provided that the payment of the bill is lawful. You have requested assistance in determining whether county funds may properly be spent for such a purpose.
Article VIII, section 1(f), Florida Constitution, provides in pertinent part that noncharter counties "shall have such power of self-government as is provided by general or special law." Implementing this constitutional provision, section 125.01(1), Florida Statutes, states that "[t]he legislative and governing body of a county shall have the power to carry on county government." The Florida Supreme Court in Speer v. Olson[1] held that this provision of section 125.01(1) grants to the governing body of a county the full power to carry on county government unless the Legislature has preempted a particular subject relating to county government by either general or special law. The Court held that the governing body of the county, by reason of this first sentence of section 125.01, has full authority to act through the exercise of its home rule powers.[2] Thus, a noncharter county exercising its home rule powers as provided in the Florida Constitution and the Florida Statutes, as construed by the Florida Supreme Court, may exercise such powers as it deems necessary to carry on county government, provided that the exercise of these powers has not been preempted to the state and does not conflict with state law or certain constitutional provisions.
Specifically with regard to road projects, section 125.01(1)(m), Florida Statutes, authorizes a board of county commissioners, in the exercise of its home rule powers, to provide for and regulate roads.[3] Section 336.02, Florida Statutes, a section of the Florida Transportation Code, gives the county commission general superintendence and control of county roads and structures within its jurisdiction and authorizes the county to establish new roads, change and discontinue old roads, and keep the same in good repair in the manner provided therein.
Moreover, counties are authorized to "borrow and expend money" for county purposes.[4] The determination of whether a certain action fulfills a county purpose, however, is one that must be made by the governing board of the county.[5]
Article VII, section 10, Florida Constitution, prohibits the state or a county, municipality, special district or any agency thereof from lending or using its taxing power or credit to aid any private corporation, association, partnership or person. The purpose of this provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefitted."[6]
Thus, whether the constitutional prohibitions contained in ArticleVII, section 10, Florida Constitution, apply is dependent in part on whether a valid public purpose is involved. The determination of what constitutes a valid public purpose for the expenditure of public funds is one that must be made by the legislative body of the governmental entity. In this instance, it is the board of county commissioners, acting in its legislative capacity, that must make the determination that payment of the cost of the traffic study ordered by citizens, independent of the county's study, serves a valid public purpose.
Several opinions issued by this office in the past may be helpful in making this determination. In Attorney General's Opinion 88-52 this office was asked whether a noncharter county was authorized to expend county funds for lobbying. In the absence of any statutory provision either expressly authorizing or prohibiting the use of county funds for this purpose, the opinion relied on the home rule powers of counties to conclude that, upon making appropriate findings that such expenditures served a county purpose, the board of county commissioners could expend county funds for lobbying.
Similarly, in Attorney General's Opinion 89-84, this office determined that Glades County was authorized to "share" a county-paid employee with a municipal service benefit unit, provide an ambulance or other equipment, or make a direct cash contribution to the unit if the county determined that a valid county purpose was served by such actions. The opinion noted that section 125.01(1)(e), Florida Statutes, specifically authorizes counties to provide ambulance service. Further, the statute provides that counties may create special districts for providing municipal services and facilities.[7] Thus, assuming the county commission made the appropriate legislative determinations as to the purpose of the project and the benefits accruing to the county, the opinion concluded that the county could financially assist the special district created to provide countywide ambulance service.
In the situation you have presented, sections 125.01(1)(m) and336.02, Florida Statutes, authorize the county to provide for and regulate county roads. In addition, counties are authorized to "borrow and expend money" for county purposes. I am aware of no provision of state statute, and you have directed my attention to none, that would prohibit payment of the costs of a traffic study used by the county commission to assess the advisability of a road project. However, the ultimate determination of whether a certain action fulfills a county purpose is one that must be made by the governing board of the county.
In sum, it is my opinion that, in light of the home rule powers granted to counties by the constitution and statutes, the board of county commissioners may expend county funds to pay the cost of a traffic study provided that it first makes appropriate legislative findings as to the purpose of the expenditure and the benefits that would accrue to the county.[8]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] 367 So.2d 207, 211 (Fla. 1978).
[2] And see, s. 125.01(1)(w), Fla. Stat. (county commission may perform any other acts not inconsistent with law which are in the common interest of the people of the county and exercise all powers and privileges not specifically prohibited by law); and s.125.01(3)(b), Fla. Stat. (provisions of section shall be liberally construed in order to effectively carry out purposes of section and secure for counties the broad exercise of home rule powers authorized by State Constitution.)
[3] See, s. 334.03(23), Fla. Stat., defining "road" for purposes of the Florida Transportation Code, Chs. 334-339 and 341, Fla. Stat., to include streets, sidewalks, highways and other ways open to travel by the public, including, among other things, the roadbed and right-of-way; and s. 335.01(2), Fla. Stat., dividing public roads into four systems, including the county road system.
[4] Section 125.01(1)(r), Fla. Stat.
[5] See, Ops. Att'y Gen. Fla. 00-55 (2000), 94-22 (1994), 89-84 (1989) (county must make appropriate legislative determinations as to the purpose of a project and the benefits accruing to the county).
[6] Bannon v. Port of Palm Beach District, 246 So.2d 737, 741
(Fla. 1971); Op. Att'y Gen. Fla. 00-55 (2000).
[7] Section 125.01(5), Fla. Stat.
[8] See, Op. Att'y Gen. Fla. 88-52 (1988), ("Upon making the appropriate findings that an expenditure of county funds for lobbying serves a county purpose and is in the public interest, the board of county commissioners may expend county funds for lobbying.").